[Civ. No. 19096. Second Dist., Div. One. Mar. 31, 1953.]

SIDNEY J. HORRELL, Plaintiff and Appellant, v. SANTA FE TANK & TOWER COMPANY et al., Defendants and Appellants.

George R. Maury for Plaintiff and Appellant.

Wadsworth & Fraser for Defendants and Appellants.

DRAPEAU, J.—Plaintiff is a mechanical engineer engaged in the sale of processing equipment. In late May of 1947, his customer Citrus Foods Company was in the market for a refrigerator unit for cooling canned orange juice. Plaintiff telephoned defendant company and inquired of Mr. Dresser, manager of the cooling equipment division, ''if he could supply a water cooling tower . . . to cool 311 gallons per minute of water from 95 degrees back down to 80 degrees Fahrenheit; the tower was to be used in or near La Habra, California. . . . He asked me if I knew what the weather conditions were at La Habra, and I told him I didn't. . . . He asked me if I knew what the wet bulb temperature was at La Habra. I told him I did not. He asked me if I knew what the wind velocity was at La Habra, and I again told him that I did not; those were things that were up to him, I was not designing a tower, I wanted a tower to cool that much water in or near La Habra. . . . I told Mr. Dresser on the telephone that one of the stipulations was that this cooling tower would have to be delivered and erected in not to exceed 30 days. I asked him if he could comply with that requirement, and he said yes.''

Either that day or the next morning, Mr. Dresser quoted plaintiff a price on an atmospheric-type cooling tower. On May 29, 1947, defendant company confirmed such quotation by a written proposal containing the following warranty of performance:

''Quantity Clean Water—U.S. Gallons per Min. 311

| | | | | |
|---|---|---|---|---|
| Initial Temp. | 95° F. | Dry Bulb | 85° F. |
| Final Temp. | 80° F. | Wet Bulb | 68° F. |
| Wind Velocity | 3 m.p.h. | Rel. Humidity 41% |
| Drift Loss | .2% | | |

Tower Site—ground
Tower Location—near La Habra, California.
Exposure—Must be broadside to prevailing wind.''

Specifically, defendants warranted performance of the tower with a 3-mile wind blowing broadside of the cooling tower.

The tower was duly installed. The citrus company selected the site, put in the forms and poured the concrete for the base. Defendants' workmen built the tower on the concrete base. When the cooling system was completed, it failed to work.

By process of elimination it was found that the "water wasn't being cooled properly. . . . The tower was not adequate." This for the reason that the prevailing wind in La Habra was at times less than 3 miles.

Defendants at first suggested additional sprays which were ineffective when installed. On September 19, 1947, defendants recommended the installation of an entirely different type of tower, i.e., a mechanical draft tower.

By the instant action plaintiff sought damages from defendants. Defendants' demurrer was sustained to the first cause of action of the third amended complaint without leave to amend.

The case went to trial on the second cause of action of said third amended complaint, to wit: fraud and deceit based upon misrepresentations of defendants concerning the weather conditions under which the tower would operate in or near La Habra.

The jury returned its verdict in favor of plaintiff. From the judgment which followed, and from the order denying their motion for judgment notwithstanding the verdict, defendants appeal.

Plaintiff has also appealed from a portion of the judgment and from an order striking cost bill which appeal is the subject of a motion now pending in this court.

It is first urged that respondent has not stated a cause of action in fraud and deceit, because of failure to allege scienter or knowledge on the part of appellants.

In general, to establish a cause of action for fraud or deceit, "plaintiff must prove that a material misrepresentation was made; that it was false; that defendants knew it to be untrue, or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce plaintiff to act in reliance thereon; that plaintiff reasonably believed it to be true; that it was relied on by plaintiff; and that plaintiff suffered damage thereby." *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].

The complaint here does allege that when they made their oral statement and submitted their written offer, "defendants did not have exact accurate information and data concerning the atmospheric or weather conditions at or near La Habra, California, and were well aware that without such information and data they could not accurately predict the performance of the cooling tower described in their written confirmation of offer or any cooling tower; and at said times and at all times thereafter to on or about September 15, 1947, defendants concealed and suppressed from plaintiff their lack of information and data and their consequent inability to predict accurately the performance of said cooling tower at or near La Habra, California."

That weather conditions at La Habra played an important part in the performance of the tower is evidenced by the questions put to respondent by appellants' agent Dresser, as hereinbefore noted. Moreover, Mr. Dresser testified that he understood from his conversation with him that respondent knew nothing about the weather conditions at La Habra.

When asked the following questions: "When you made him the quotation . . . you put in that quotation dry bulb 85 degrees, wet bulb 68 degrees Fahrenheit, relative humidity 41 per cent, wind velocity 3 miles per hour. First with regard to the wind velocity, Mr. Dresser, what information did you have at that time to arrive at a wind velocity of 3 miles per hour?"—Mr. Dresser replied: "Past experience on quoting cooling towers for installation in this area; also charts showing wind direction and the average wind velocity, which is higher than what was picked."

One of the charts used was a government weather bureau report showing average wind velocity for the city of Los Angeles.

The witness admitted that he did not conduct any wind tests at La Habra prior to making his quotation.

He further testified: "Q. By Mr. Maury: You were aware, then, I take it, Mr. Dresser, at the time that you sold the tower to Mr. Horrell, that it did require a 3 mile per hour wind in order to function properly? Did it not? A. Yes, sir. Q. And you were also aware, were you not, that there was no 3 mile an hour constant wind to be expected anywhere in the Los Angeles basin area; is that not true? . . . The Witness: The answer is that's true. . . . When I talked with Mr. Horrell I knew that the cooling tower would perform when

the wind was 3 miles per hour and given the conditions as they existed on the proposal. . . .

"Q. Did you ever tell Mr. Horrell that the practice in the industry was to quote these averages instead of facts? A. Nothing was said of that. . . . Q. Did you ever tell Mr. Horrell he could not reasonably expect a constant 3 mile per hour wind at La Habra? A. Not that I recall. Q. Did you ever tell him that you meant by these performance specifications that those conditions might occur sometime at La Habra, and that then the tower would work? A. Not that I recall."

He also admitted that when he went out to La Habra in the fall of 1947, he estimated the wind velocity at one mile.

In view of the foregoing, it is clear that respondent not only alleged but established by substantial evidence that appellants did not have sufficient knowledge of the weather conditions at or near La Habra to warrant a belief that their representations regarding them were true. (*Hobart* v. *Hobart Estate Co., supra,* 26 Cal.2d 412, 422 [159 P.2d 958].)

See, also, *Wishnick* v. *Frye,* 111 Cal.App.2d 926, 930 [245 P.2d 532], where it is said: "In order to satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant. (*Gonsalves* v. *Hodgson, supra,* (38 Cal.2d 91, 100 [237 P.2d 656]); 12 Cal.Jur. 724, 725; Restatement of Torts, § 526.)"

Section 1572, subdivision 2, Civil Code, defines as actual fraud, "The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

And actual fraud is always a question of fact. (Civ. Code, § 1574.)

On the issue of reliance, respondent testified as follows:

"Q. Then I will ask you, Mr. Horrell, upon what did you rely when you purchased the cooling tower? A. I relied upon the fact that a cooling tower manufacturer who had to design and furnish a cooling tower to do a certain job would make it a point to provide that tower at the place where we requested, to function that way where we requested that it was to function, and that was in La Habra, and he couldn't

do that without checking into the weather conditions, couldn't honestly fulfill that contract without checking into those weather conditions at La Habra and his was the design function of the tower—not mine.

"Q. Now, in reselling the tower to the American Fruit people did you reguarantee the tower to them? A. I did.

"Q. And upon what did you rely when you reguaranteed the tower to them? A. I relied on the fact that I had purchased a tower for them from an experienced tower manufacturer and that they, in turn, would furnish a tower, through us, to the job that would function under these conditions."

Here the jury's verdict is conclusive, based as it was upon conflicting evidence presented on the various issues involved.

■ Appellants cite as prejudicial error certain comments made by the trial judge in sustaining respondent's objection to introduction in evidence of weather charts, to wit:

"The Court: Did these charts or any of them or all of them together, tell you that there would be a constant breeze in La Habra of at least 3 miles an hour?

"The Witness: No, sir.

"The Court: Did you know this tower that you sold Mr. Horrell required a breeze of at least 3 miles an hour to function properly?

"The Witness: I would like to explain the performance of the tower.

"The Court: Can you answer the question? . . .

"The Witness: No."

It is claimed that the trial court arrived at a conclusion which was contrary to the evidence and that the remarks had such an influence on the jury as to deprive appellants of a fair trial.

However, there was evidence to the effect that the cooling system was operated on a 24-hour basis and required a 3-mile wind broadside of the tower at all times to keep it in operation.

It is also claimed that the trial court committed prejudicial error in refusing to give three of appellants' instructions to the jury.

There was no error in refusing to give the particular instructions complained of, for the reason that the jury was fully and fairly instructed on all of the aspects of fraud and deceit. ■ It is not error for a court to refuse to give a requested instruction if the full charge correctly states the

substance of the law applicable to the facts involved in the case (24 Cal.Jur. 806-810) ; and a reversal is not warranted unless it appears probable that a different result would have obtained had the refused instructions been given (24 Cal.Jur. 861-865).

For the reasons stated, the judgment and the order denying motion for judgment notwithstanding the verdict are, and each of them is, affirmed.

The motion of plaintiff-respondent for leave to dismiss his appeal from the judgment and the order striking cost bill is granted. Said appeal from the judgment and from said order striking the cost bill is dismissed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied April 27, 1953, and defendants and appellants' petition for a hearing by the Supreme Court was denied May 28, 1953. Schauer, J., was of the opinion that the petition should be granted.