[Civ. No. 26781.   Second Dist., Div. Two.   Oct. 11, 1963.]

JAMES KEVIN McMAHON et al., Plaintiffs and Appellants, v. EARL L. MADDOX et al., Defendants and Respondents.

Higgs, Fletcher & Mack and Marshall L. Foreman, Jr., for Plaintiffs and Appellants.

Callaway, Kirtland & Packard and Judith O. Hollinger for Defendants and Respondents.

FOX, P. J.—This is an action for wrongful death arising out of a midair collision between two airplanes. Plaintiffs appeal from a judgment entered on a verdict in favor of defendants.

Plaintiffs' deceased, a Lieutenant in the Naval Reserve, was flying a Navy T-34 training plane at the time of the accident. The other plane, a Cessna 170 owned by defendant Scott Aero Service, Inc., was being flown by defendant Maddox, a student pilot, and defendant Scott, a flying instructor. Although Scott was in full charge of the aircraft, Maddox manipulated the controls up until the time of impact. Two passengers, not defendants in this action, were seated in the rear of the Cessna.

The point of collision was about 2,000 feet above the coast near Huntington Beach. Visibility was about 30 miles, and weather was not a factor. The Cessna was flying parallel to the coastline in a northwesterly direction. The T-34 was flying to the left of the Cessna, with the angle of convergence about 15 to 30 degrees. Although Scott was on the lookout for other planes, neither he nor Maddox saw any aircraft near the Cessna immediately prior to the accident. Scott testified that the first thing that made him think something unusual had happened was when he felt the Cessna shudder. He then looked out the window and saw the T-34 going down and off to the right. The T-34 crashed, killing the pilot instantly. After the impact Scott took over the controls of the Cessna and landed it.

On the issue of defendants' negligence and decedent's contributory negligence the crucial question of fact was which of the two planes was overtaking the other. Both were flying in a generally northwesterly direction, and Civil Air Regulations require the overtaking aircraft to yield the right of way to the plane being overtaken. In a case where the planes are converging, the plane on the right has the right of way. (Civil Air Regulations § 60.14.) Plaintiffs' expert witness testified that in his opinion the Cessna was overtaking the T-34 at the time of impact. An expert witness for the defendants testified that it was his opinion that the T-34 was the overtaking aircraft. The only independent witness to the incident was a Mr. Wells, who was flying a plane nearby at the time. He testified that the T-34 appeared to be overtaking the Cessna, but that he did not see the collision.

Plaintiffs' only assignment of error relates to the trial

court's refusal to give two requested instructions to the jury.

The following definition of an "overtaking plane" was offered by the plaintiffs: "I hereby instruct you that an overtaking plane is one which comes up with another plane from any direction more than 20 degrees abaft the beam of the overtaken aircraft, i.e., in such a position with reference to the overtaken aircraft that the smaller angle between the longitudinal axes of the two aircraft respectively is 70 degrees or less."

This instruction, which was refused, is based on maritime law and comes from the definition of "overtaking vessels" contained in the navigation rules for inland waterways. (33 U.S.C.A. § 209.)

Plaintiffs argue that the instruction should have been given to aid the jury in distinguishing between converging and overtaking aircraft because the jury might have believed that the T-34 was being overtaken but that the Cessna had the right of way anyway, being to the right of the T-34 in a slightly converging situation.

█ Aside from the questionability of applying maritime law to airplane traffic, the issue of which plane was being overtaken was one of fact for the jury to determine. █ The jury heard the testimony of two expert witnesses on this point, and also from an independent eyewitness. From this testimony they could judge for themselves which plane was the overtaken aircraft. █ Jurors are presumed to possess ordinary intelligence, and to be capable of understanding the meaning and use of ordinary words and phrases. (*Pobor* v. *Western Pac. R.R.Co.*, 55 Cal.2d 314 [11 Cal.Rptr. 106, 359 P.2d 474].) █ Since the term "overtaking plane" does not appear to require any technical explanation, the requested instruction was unnecessary.

As to the rules regulating the rights of way for converging and overtaking airplanes, the jury was adequately instructed.[1] The court also fully instructed the jury generally in the

---

[1] "Section 60.14 of the Civil Air Regulations [*sic*], in force and effect at the time of the happening of this accident, reads in part as follows:

"An aircraft which is obliged by the following rules to keep out of the way of another shall avoid passing over or under the other, or crossing ahead of it, unless passing well clear:

"Note: Right of-way rules do not apply when, for reasons beyond the pilot's control, aircraft cannot be seen due to restrictions of visibility. The aircraft which has the right-of-way will normally maintain its course and speed, but nothing in this part relieves the pilot from the responsibility of taking such action as will best aid to avert collision.

"(b) ... When two or more aircraft of the same category are

law of negligence and contributory negligence. In such circumstances, the instruction requested by plaintiffs would not have aided the jury in its determination. They were fully aware of the rules regarding overtaking and converging aircraft, and an analogy from maritime law would probably only serve to confuse them, particularly since the tendered instruction contained some technical terms which were not defined or explained.

Plaintiffs also argue that the following instruction should have been given:

"I hereby instruct you that section 60.14 of the Civil Air Regulations, in force and effect at the time of the happening of this accident, reads in part as follows:

" 'Aircraft, while on final approach to land, or while landing, have the right-of-way over other aircraft in flight or operating on the surface. When two or more aircraft are approaching an airport for the purpose of landing, the aircraft at the lower altitude has the right-of-way, but it shall not take advantage of this rule to cut in front of another which is on final approach to land, or to overtake the aircraft.' "

It does not appear that anything in the record would require the giving of this instruction.

In support of their theory that the T-34 was on its final landing approach, plaintiffs point out that the decedent had requested and received certain landing information from the control tower. However, the testimony of Lieutenant Commander Caulkett, Assistant Flight Training Officer at the Naval Air Station at the time of the accident, shows that decedent had not yet begun his "final approach to land." According to this testimony the standard procedure when approaching the landing pattern was for the pilot to call

converging at approximately the same altitude, each aircraft shall give way to the other which is on its right.

"(d) An aircraft that is being overtaken has the right-of-way, and the overtaking aircraft, whether climbing, descending, or in horizontal flight, shall keep out of the way of the other aircraft by altering its course to the right, and no subsequent change in the relative positions of the two aircraft shall obsolve [*sic*] the overtaking aircraft from this obligation until it is entirely past and clear;

"(Note:) Passing an overtaken aircraft on the right is required because the pilot in side-by-side, dual-control aircraft is seated on the left and has a better view on that side. Further, in narrow lanes, passing on the left of the overtaken aircraft would place the overtaking aircraft in the path of the oncoming traffic.''

from a point (known as "Point Zulu") 5 to 7 miles south of Huntington Beach at an altitude of about 2,000 feet. He was then to proceed to a point north of Huntington Beach, cross the beach, and fly inland 2 or 3 miles. The descent to 1,500 feet was not to take place until after crossing the beach. According to witness Campbell, also a naval flyer, when you get over the beach you are not in your "landing pattern" until you break off and drop down to below 1,500 feet. The pilot then was to go "upwind over the runway at 1500 feet, break down wind for his landing approach," descending to 1,000 feet and lowering the landing gear and flaps.

Decedent had called the tower from Point Zulu, stating that he was "off the beach." In doing so, however, he had completed only the first of three required radio calls in the landing pattern. Witness Campbell testified, "The second radio call was made when you were either approaching or immediately overhead the field—clearance to break, as we called it—for landing. The final radio call before landing was made when you would turn 180 degrees and were going opposite to the direction to which you were required to request landing clearance and certify your landing gear was down and your airplane was in condition for landing."

The call from Point Zulu was the only communication from decedent, the collision with the Cessna occurring soon thereafter. In view of the elaborate landing procedure outlined in the testimony and the position of decedent's plane, it does not appear that the evidence is sufficient to support an inference that the T-34 was on a "final approach to land" within the meaning of the Civil Air Regulations. This being the case, the instruction based on such a theory was properly refused.

The remainder of the instruction, regarding two or more aircraft approaching an airport for the purpose of landing, is not supported by any evidence in the record. Plaintiffs in their brief do not offer any argument for this part of the instruction.

Taking both parts of the proffered instruction into consideration it is apparent that the first part applies only to aircraft "on final approach to land," and the second part applies only when two or more aircraft are approaching an airport to land. The court, therefore, properly refused the instruction since the evidence showed that decedent was not on his final landing approach, and since there was no evidence to support an inference that two or more planes were approaching an airport for landing.

Moreover, even if the court erred in refusing this instruction, it could not be said to be prejudicial to the point of justifying a reversal. The jury was given extensive instructions regarding the operation of planes, and the law with respect to negligence. It does not appear probable that they would have reached a different verdict had the refused instruction been given, and in such circumstances a reversal is unwarranted even if the instruction should have been given. (*Duff* v. *Schaefer Ambulance Service, Inc.*, 132 Cal.App.2d 655, 681 [283 P.2d 91]; *Horrell* v. *Santa Fe Tank & Tower Co.*, 117 Cal.App.2d 114, 121 [254 P.2d 893].)

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.