[Civ. No. 8345. Third Dist. June 25, 1954.]

ALFRED NELSON, Respondent, v. HOWARD E. MARKS, Appellant.

 

Dinkelspiel & Dinkelspiel for Appellant.

Alfred Nelson, in pro per., for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against Howard E. Marks, Frank B. Marks, Sr., Frank B. Marks, Jr., and Roger Paul to recover damages for fraudulent representations, alleged to have been made by defendant Howard E. Marks and his agent, defendant Paul, in connection with the sale of a tractor purchased by plaintiff. Defendants filed an answer denying the material allegations of the complaint and also setting up defenses of laches and the statute of limitations. The case was tried by a jury and during the trial the action was dismissed as to defendants Frank B. Marks, Sr., and Frank B. Marks, Jr. The jury returned a verdict awarding damages in the sum of $2,500 against defendant Howard E. Marks, but found in favor of defendant Paul. Judgment was entered accordingly, and following the denial of his motion for a new trial defendant Howard E. Marks filed this appeal from said judgment.

Appellant makes four major contentions: (1) that the evidence is insufficient to support the verdict and judgment; (2) that the action is barred by the statute of limitations; (3) that the trial court committed prejudicial error in admitting respondent's deposition into evidence; and (4) that the trial court committed prejudicial error in giving certain instructions and in refusing to give another.

Appellant's first contention is that the evidence is insufficient to establish a cause of action for fraud and deceit. He states that the respondent had the burden of proving all of the elements necessary to support the judgment and cites the case of *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958], where the court said at page 422:

"In general, to establish a cause of action for fraud or

deceit plaintiff must prove that a material representation was made; that it was false; that defendants knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce plaintiff to act in reliance thereon; that plaintiff reasonably believed it to be true; that it was relied on by plaintiff; and that plaintiff suffered damage thereby. In determining the sufficiency of the evidence to meet these requirements we must, in view of the verdict, resolve all conflicts in plaintiff's favor and draw all permissible inferences necessary to support the judgment.''

It appears from the record that respondent is a practicing attorney who also conducted some farming operations in the vicinity of Tracy, California. During the latter part of 1946, he wanted to purchase a used tractor, a heavy one, and he asked Roger Paul to be on the lookout for one. Paul was a mechanic and operated a repair shop near Tracy. Respondent had ''a lot of confidence'' in Paul and thought that he was a mechanic with extraordinary ability.

Appellant resided in Tracy and operated a small ranch nearby. He also was engaged in the quarry business. Appellant and his brother owned a D7 Caterpillar tractor, with a Le Tourneau power control unit, A-frame and bulldozer blade, and in December, 1946, appellant took the tractor to Paul's shop to have the engine overhauled. Respondent first saw the tractor while it was in the shop. The engine had been taken out of the tractor and disassembled. Paul told respondent that the tractor was for sale and referred him to appellant. This was in December of 1946 or January of 1947. A few days later respondent went to see appellant about the tractor and they reached an agreement regarding the purchase and sale of the tractor and equipment in about ten days, after further negotiations. This agreement was not reduced to writing. The selling price of the tractor and equipment was $6,000, which respondent paid over a period of months, making the last payment in August, 1947, and taking delivery of the tractor and equipment at that time. Respondent was also then given a bill of sale. During the negotiations for the purchase and sale, the tractor remained in Paul's shop.

There was a sharp conflict in the evidence as to what representations were made to respondent regarding the condition of the tractor. Respondent testified that during the negotiations:

(a) He asked appellant about the rear end of the tractor, including the transmission, final drives ''and all that sort

of thing," and that appellant told him that he had no cause to worry or be concerned about the transmission "or any of those things" because the transmission, steering clutches, final drives and the whole rear end had recently been checked over, overhauled and found to be in perfectly good condition and in good running order, and that when the engine was overhauled, the engine and all the rest of it would be in perfect shape;

(b) Appellant said that he had had the rear end of the "thing" all overhauled for his own use and had intended using it himself and was having the engine overhauled now, that he had an order for a new D7 Caterpillar and had no use for two of them, but that if the new one was not forthcoming he was going to keep the old one and "use it right along," and that the machine "absolutely was for all practical purposes as good as new at the time and that is of that type and age";

(c) Appellant said "this tractor will go, you needn't worry about that";

(d) Appellant said that some of the top rollers were not in good shape and that he was renewing them (respondent admits that some new top rollers were furnished), and that when asked about the bottom rollers appellant said that they were all right and did not need renewing;

(e) Appellant said that he had been having some trouble with the engine, but that he was having it completely overhauled and when it was finished it would be in first-class condition;

(f) Appellant told him "flatly the thing [tractor] was in good shape";

(g) Appellant said that he was having the engine overhauled, and when asked how the transmission, final drive and rear end rollers were, appellant answered "that has been gone over recently; that is tiptop"; and

(h) Appellant said that the engine was the only thing that needed overhauling, that the rest "was practically perfect."

Respondent also testified that he told appellant about his need for a large tractor and the difficulty of getting a new engine at that time, and that if this engine were completely overhauled and in good shape he (respondent) did not mind its being old.

Appellant testified that he simply told respondent that the tractor was a "used working tractor," that to his (appellant's) knowledge "it was a working tractor," that he had

used it personally on his ranch, land planing, and that the motor was using oil to the point where he felt that it should be reconditioned and that that was the reason it was in the repair shop. He denied that he made any other representations regarding the condition of the tractor. When asked whether respondent had said anything about Paul inspecting the tractor, appellant answered: "The only thing that was brought up was that Paul was working on the motor, that the tractor was available to look at, and to satisfy himself at the shop where the tractor was. It was free and clear there to stand all the inspection that he wanted to make on the tractor."

Respondent knew that he was getting an old machine. However, he testified that he did not make a careful inspection of any part of it because he was relying on what appellant told him concerning "the thing" and he felt justified in relying on that because he saw no reason to do otherwise and because it was corroborated by his old acquaintance, Mr. Paul. He admitted that he told appellant he would rely, to a large extent, on Paul's judgment concerning the condition of the tractor, but said he did not tell appellant that he was relying exclusively on what Paul said. And, although he testified that he was relying primarily on Paul's representation, which "was backed up by" appellant, and was relying on Paul for the final word, he also testified:

". . . when I did purchase the tractor from Mr. Marks I did rely implicitly and whole-heartedly in his assurance that the tractor, in every respect, was in good repair and that it had totally been overhauled, and the reliance, the complete reliance that I had his word at that time, as I told him, was because I trusted him and his word was corroborated by Mr. Paul, and I frankly told Mr. Marks at the time that I was entrusting him and placing that reliance on his word to a great extent because his worker, Mr. Paul, was a person in whom I had unlimited confidence with respect to the condition of tractor, and it was on that basis that I bought it and paid him $6,000.00 in money."

And

". . . Yes, I was relying on Mr. Howard Marks because Mr. Paul had given his judgment that the thing was in tip-top shape. That corroborated what Mr. Marks had said, and if I had met Mr. Marks the very first time, unconnected from Mr. Paul, I may not have placed as much reliance upon Mr. Marks, that is true."

According to respondent, Paul told him that he (Paul) had not personally gone through any parts of the tractor other than the engine, but that appellant had told him (Paul) "that the rear end and all those things, transmission and drives and steering clutches, so on, were in first-class condition." In this regard the evidence shows that most of the working parts of the tractor were enclosed by heavy castings and that it took two or three men to remove some of them. Appellant's counsel stipulated that the transmission gears cannot be seen unless the deck is removed, and that none of the mechanism in the final drives can be seen without removal of the housing which covers it.

Respondent took delivery of the tractor in August, 1947, and used it for about a day and a half that month, and a little bit in early September. On about September 10, 1947, he started using the tractor for heavy work. Just prior to this, he had had some trouble with the clutch bearing, but thought that his operator might have been at fault. He had this repaired and on September 12th he had trouble with the starting motor drive which he said "wasn't a terrible serious thing, but it is annoying." He had this repaired too, and the record shows a series of repairs thereafter, some of them major, as follows: Steering clutch repaired, October, 1947; transmission replaced, November, 1947; valve tappets checked and cracked head repaired, December, 1947; right final drive fixed, December, 1947; engine overhauled and final drives repaired, May-June, 1948; steering clutches repaired, December, 1948; steering clutches again repaired, summer, 1949; and cracked cylinder head replaced, June, 1951. Harty, a mechanic who helped to replace the transmission in November, 1947, testified that in his opinion the tractor was then in the later stages of being worn out, and that it was in pretty rough shape and had received a lot of use. He also testified that the transmission was in bad shape and needed replacing, which was done, and that this wear was something that did not develop quickly, but took a considerable time. Another mechanic, Parlet, who worked on the tractor while the motor was being overhauled and the final drives repaired, in May-June, 1948, testified that the rails and swing frame (the part connected to the rollers and on which the tractor sits) had been welded several times and was crooked, and that he suggested that they be taken out and junked. However, the rails broke down at least six times while respondent

had the machine, and some of this welding may have been done then.

Paul testified that he completely overhauled the engine in January, 1947, and he tried the tractor out and it worked properly. He also testified that he had the cylinder heads off and did not notice anything wrong with them. Appellant testified that he used the tractor after Paul returned it and that it worked properly. The mechanic who repaired the clutch bearing in September, 1947, testified that he took the deck off the tractor and did not notice anything wrong with the working parts and, further, that he ran the tractor, after making the repairs, and he noticed nothing unusual about it. He also stated that the trouble with the clutch bearing was lack of lubrication. There is other testimony, however, that defects in the transmission probably would not be noticed because the gears are covered with a heavy film of lubricating oil, and Harty, who worked on the tractor at least half a dozen times, testified that it was always well lubricated. Respondent testified that the tractor was lubricated regularly and in accordance with Paul's instructions. He also testified that the tractor engine used excessive amounts of oil until he had the engine overhauled in May-June of 1948. Harty was asked whether, when he first saw the tractor in 1947 or 1948, he made any estimate of what it would "reasonably cost" to put the tractor in shape so that it could go out and work like a tractor should work, to which he replied that he and his partner had talked about it "extensively" and had decided that they could not do it for less than four or five thousand dollars and still guarantee their work.

As stated in *Hobart* v. *Hobart Estate Co., supra,* it is sufficient if the evidence shows that appellant made a material representation regarding the condition of the tractor, that the representation was false and appellant knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true, that the representation was made with the intention of inducing respondent to purchase the tractor, and that respondent believed the representations and completed the purchase in reliance thereon, suffering damage thereby.

As hereinbefore pointed out, there is testimony that appellant made certain representations to respondent regarding the condition of the tractor, including statements that the transmission, steering clutches, final drives and whole rear end had recently been checked, overhauled and found to be in

perfectly good condition, and that the engine was the only thing that needed overhauling. These were material representations of fact—material because of the age of the tractor—and were not mere expressions of opinion based on engine repairs then being made (as appellant would have us believe). Their falsity may be inferred from the nature and extent of the repairs which were found to be necessary after respondent took delivery of the tractor, and appellant must have known that they were untrue since he had had the tractor for more than a year and had been using it. It is significant that he did not attempt to show where, when or by whom the rear end was overhauled, although he took the stand as a witness. These representations were made during the negotiations between the parties and it is a fair inference that they were intended to induce respondent to make the purchase. As to the question of reliance, the evidence is not quite so strong, but respondent did testify, unequivocally, that he relied on appellant's representations and told appellant so, even though he sought and obtained confirmation from Paul. There is no showing in the evidence that respondent made any examination of the transmission, steering clutches or other working parts in the rear end of the tractor, or even that he could have done so, they being enclosed by heavy castings which could not be removed by one man. ■ The applicable rule, where the buyer does make an independent investigation or examination of the property, is that he is not thereby precluded from relying on representations where the falsity thereof is not apparent from an inspection, where the person making the representations has a superior knowledge, or where the buyer relying thereon is not competent to judge the facts without expert assistance. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 748 [192 P.2d 935].)

Appellant contends also that the judgment for $2,500 damages is unsupported by the evidence, Appellant cites section 3343 of the Civil Code, which, so far as applicable here, reads as follows:

"One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction." Appellant argues that there was no evidence "to show that the actual value of the tractor when it was purchased was any different from the purchase price paid."

There is evidence in the record that appellant and his brother paid approximately $9,100 for the tractor and a used scraper in July, 1945, and that the value of the scraper was about $1,500. This is some evidence that the tractor would have been of the value of at least the $6,000 that repondent paid appellant for it if the representations of appellant as to its condition had been true. ▮ As stated in *Eatwell* v. *Beck*, 41 Cal.2d 128, at page 134 [257 P.2d 643] : "Evidence of 'sales of the *identical* property in question, whether realty or personalty' is also a proper indicium of value." ▮ While there appears to have been no specific statement by any witness as to the value of the tractor in the condition it was found to be in by respondent after the purchase, yet there was testimony that it was necessary for respondent to expend nearly $4,500 to put it in the condition it was represented to be in by appellant. There was also evidence of damage to respondent for loss of use of the tractor during the making of the repairs. This evidence is certainly sufficient to show that the verdict awarding respondent damages in the sum of $2,500 was well within the amount that could have been awarded for the difference between the value of the tractor as its condition was represented to be by appellant and the condition that it was actually proved to be in and "any additional damage arising from the particular transaction" as provided in section 3343 of the Civil Code.

As pointed out by appellant, no instruction was given by the court as to the measure of damages nor was any such instruction offered by either appellant or respondent. The record is voluminous, the trial occupying three days, and appears to have been fought out and presented to the jury on whether or not there had been misrepresentations as to the condition of the tractor. While appellant does not urge the failure of the court to instruct on the measure of damages as reversible error, we believe that the court should have given such instructions even though none were offered by counsel. ▮ However, as stated in *Perry* v. *City of San Diego*, 80 Cal.App.2d 166 (hearing denied), at page 171 [181 P.2d 98] :

"It is a rule generally recognized in California that a party may not complain of the failure of the trial court to instruct on a subject in the absence of that party's request to give a proposed instruction thereon. (*McFate* v. *Zuckerman*, 130 Cal.App. 172 [19 P.2d 532] ; *Bramble* v. *McEwan*, 40 Cal. App.2d 400 [104 P.2d 1054] ; *Peckham* v. *Warner Bros. Pic-*

*tures, supra* [42 Cal.App.2d 187 (108 P.2d 699)].) In *Ellis* v. *Tone*, 58 Cal. 289, it was held that it was not reversible error to fail to give an instruction on the measure of damages where none had been requested.''

Appellant next contends that respondent's action is barred by subdivision 4 of section 338 of the Code of Civil Procedure which provides that an action for fraud must be brought within three years after discovery of the facts constituting the fraud. This contention is without merit. Respondent's complaint alleges that he did not discover the defects and imperfections in the tractor until after September 10, 1947; that prior to that time the tractor functioned efficiently in the ·work in which it was used; and that it was not until many months later, after repeated breakdowns and recurrent repairs, that the full extent of the imperfections became apparent to respondent. These allegations are supported by the evidence, and inasmuch as the action was commenced on September 5, 1950, it was filed within the three year period.

Likewise without merit is appellant's contention that respondent's action was barred as a matter of law because of laches. The instant action is one at law in which the defense of laches is not available. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744 [192 P.2d 935]; *Brownrigg* v. *deFrees*, 196 Cal. 534, 539 [238 P. 714].)

There is no merit in appellant's next contention that the court erred in admitting respondent's deposition, which had been taken by appellant, as a part of respondent's case without instructing the jury that the testimony therein could not be weighed against the presumption of honesty and fair dealing on the part of appellant. While the deposition had been taken under section 2055 of the Code of Civil Procedure and appellant was not bound thereby, it was, of course, as stated in *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, at page 559 [299 P. 529], ''evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the court, or if the case is before a jury, by the jury.'' Section 2022 of the Code of Civil Procedure provides that depositions may be read in evidence by either party, and the deposition of a party is admissible even though such party is present at the trial. (*Ahern* v. *Superior Court*, 112 Cal.App.2d 27, 31 [245 P.2d 568].)

Appellant also complains of the following instructions, given at the instance of respondent:

"If a seller actually knows the condition of a tractor he is selling, or if he represents to the buyer that he does know the condition of the tractor he is selling, and the buyer is uninformed and is known to the seller to be uninformed concerning the tractor and to the knowledge of the seller the buyer relies upon representations of the seller concerning the tractor, the seller will be held accountable for statements he makes concerning the tractor although an imperfect examination of the machine had been made by the buyer if expert knowledge were necessary to understand the true condition of the tractor and the buyer was persuaded by representations of the seller or the seller's agent from making a complete examination of the tractor."

"When there is an intent to deceive and the statement does mislead an intending purchaser, whether a seller or his agent acting in the scope of his employment misrepresenting a material fact knew it to be false or made the assertion without knowing whether it was true or false is immaterial. In such instance if a party asserts that is true which he does not know to be true it is a false representation. One intending simply to state his belief or opinion should state it in that precise form so as to inform the purchaser of the true grounds upon which the statement is made. One stating a material fact to be true in general terms without qualification is presumed to make the statement upon his own knowledge or at his peril and must make good his assertion."

"The mere fact, if it be a fact, that the plaintiff in this action had seen the tractor under consideration prior to its purchase does not preclude him from relying upon representations concerning the tractor the truth of which would have been discoverable only by a person who was an expert in examining such machinery."

"You may consider whether the plaintiff was put upon inquiry or whether he was lulled into reliance upon any representations made at the time of the sale as to the condition of the tractor; whether he made an independent investigation or examination of the tractor or had independent knowledge thereof."

Appellant contends that the first two of these instructions are erroneous on the ground that they make no distinction between representations of fact and of opinion. An identical contention was made in *Wells* v. *Lloyd*, 21 Cal.2d 452 [132 P.2d 471], and the court there said that the error, if any, was harmless where the omission was supplied by

other instructions. In the case at bar, the distinction between representations of fact and of opinion was fully covered by other instructions, particularly by appellant's requested instructions Nos. 1, 6 and 7, which were given.

 Appellant concedes that the third instruction above "might not have misled the jury" if it stood alone, but contends that when considered with the first and fourth of these instructions it is highly probable that the jury was misled into excusing respondent from making the reasonable investigation which he was bound to make under the circumstances, and, further, that it would permit the jury to find for respondent if he had been "lulled into reliance," whether or not he made an investigation or had independent knowledge of the condition of the tractor. The jury was fully instructed regarding respondent's duty to make an investigation and the consequences thereof. These instructions were given at the request of appellant and exceed the requirements imposed upon the buyer as set out in *Bagdasarian* v. *Gragnon, supra,* at page 748.

 Appellant's final contention is that the trial court committed error in modifying one of appellant's requested instructions by striking out the statement that the presumption against fraud is "a presumption approximating in strength to that of innocence of crime." The instruction in question was as follows:

"You are instructed that fraud should not be charged lightly. It is a serious impugnation of the integrity of the defendants, and when asserted must be proved beyond a mere peradventure. The presumption is always against fraud, ~~a presumption approximating in strength to that of innocence of crime,~~ and it should not be deemed overcome, even prima facie, upon any intangible or shadowy showing."

There is no merit in this contention as the record shows that the jury was fully, correctly and fairly instructed regarding the presumption against fraud and in favor of fair dealing. It is not error for the court to refuse to give a requested instruction if the full charge correctly states the substance of the law applicable to the facts involved in the case. (*Horrell* v. *Santa Fe Tank & Tower Co.,* 117 Cal.App. 2d 114, 120-121 [254 P.2d 893].)

The judgment is affirmed.

Van Dyke, P. J., concurred.