[Civ. No. 21496. Second Dist., Div. Two. Aug. 6, 1956.]

C. D. PRUITT et al., Appellants, v. JOSEPH FONTANA, Respondent.

Wolver & Wolver for Appellants.

Voorhees, Stewart & Voorhees for Respondent.

FOX, J.—Plaintiffs appeal from a judgment dismissing the action. The appeal has also been taken from orders striking their fourth amended complaint and denying their motion to permit the filing of such pleading.

On March 24, 1955, after demurrers to his original complaint and two amended pleadings had been sustained, plaintiff C. D. Pruitt filed his third amended complaint for damages for breach of contract comprising two causes of action. On April 14, 1955, a demurrer to this pleading was sustained and plaintiff was allowed 10 days to amend. On May 3, 1955, subsequent to the 10 days' leave period, a fourth amended complaint was filed, adding Citrus Homes as a party plaintiff. Three additional causes of action were included in this amended pleading. Defendant thereupon demurred to the fourth amended complaint and also filed a motion to strike the entire pleading. The motion to strike was made essentially on the ground that the fourth amended complaint "adds new and substantially different causes of action and new parties than were included in all prior complaints." No question of the late filing was raised. On May 20, 1955, the motion to strike was granted.

On June 8, 1955, plaintiffs filed a notice of motion to reconsider the order striking the fourth amended complaint, and for leave to amend by filing the fourth amended complaint adding Citrus Homes as a new party plaintiff. The notice of motion was supported by an affidavit of plaintiff's attorney stating his recent research indicated (1) Citrus must be treated as a joint venturer with plaintiff; (2) that the agreement previously pleaded simply as a sales contract should be pleaded in the alternative as an option to purchase; and (3) the facts of the estoppel previously pleaded should be alleged in separate causes of action. The affidavit concluded that "failure to do so heretofore was the result of mistake, inadvertence or excusable neglect." On July 5, 1955, the motion to reconsider was granted. At the same time the court heard and denied plaintiff's motion for leave to file the fourth amended complaint. Defendant filed an application for dismissal under Code of Civil Procedure section 581, subdivision 3, for failure to amend the third amended complaint within the time allowed. This application was granted and the action dismissed.

It has been conceded on appeal that the question of the late filing of the fourth amended complaint is not before this court, since plaintiffs were granted additional time to file this pleading by oral stipulation of counsel. It is urged, however, (1) that plaintiffs' fourth amended complaint was properly stricken because it included a new party plaintiff and three additional causes of action without procuring leave of court; and (2) that in any event, the fourth amended complaint, like its predecessors, failed to allege a cause of action.

### THE THIRD AMENDED COMPLAINT

The third amended complaint is in two counts. Count I alleges the following facts:

1. Defendant owned approximately 25 acres of property in Los Angeles County, subject to a $42,500 deed of trust, of which Mr. and Mrs. Gorman were beneficiaries. On April 10, 1952, plaintiff and J. A. Thompson[1] entered into a written contract with defendant, as an unmarried man, for the purchase of this property for $78,986.25. The instrument was deposited in an escrow established that day to handle the transaction. Under the terms set forth in the instrument, which is pleaded only by its legal effect, the buyers were to

[1]Thompson subsequently assigned his interest to plaintiff.

pay into escrow the sum of $1,200 per acre on or before May 1, 1953. The balance was to be paid in full on or before September 1, 1953. The land was to be taken subject to covenants, easements, etc., of record "to be approved by the buyers." It was also agreed that the buyers would pay the Gormans $17,500 and execute a second deed of trust to the Gormans, subordinate to after-acquired construction loans, for the amount of the balance due. The instrument was made contingent upon receiving approval of the Gormans to the transaction.

2. Prior to July 1, 1952, plaintiff deposited $6,000 into escrow, which was to remain his property until completion of the escrow.

3. Prior to the execution of the above writing, the buyers told defendant they were purchasing the land to subdivide it into lots under the California Subdivision Map Act, to construct homes thereon, and sell it as improved real property. It would therefore be necessary to have the property engineered and mapped and such maps approved for recordation as a subdivision by the proper governmental agencies. As a prerequisite to the approval of such maps, the property would have to be free of all easements not approved by the governmental agencies. In order for the buyers to cause the land to be improved, it would be necessary that the title be acceptable to lending institutions. The only covenants, easements, etc., which the buyer would approve would be those acceptable to the governmental agencies and lending institutions. Defendant thereupon stated that the land was not subject to any covenants, easements, rights of way, etc.

4. On April 14, 1952, a written amendment was executed by which the close of escrow was made to be the time the tract map was ready for filing, or not later than August 1, 1952.

5. On May 23, 1952, plaintiff learned that the land was subject to the following easements: (a) An easement over the east 40 feet thereof as a private road; (b) an easement to lay and maintain water pipes by Leffingwell Rancho, Inc., a corporation; (c) an easement to lay pipelines and incidental purposes to the Pacific Electric Railway, a corporation; (d) an easement over the north 7.5 feet of the southerly 19.30 feet for a pipeline not to exceed 16 inches in diameter to Industrial Fuel Supply Company, a corporation, and (e) the right to receive water by means of conduits and pipelines upon said land.

6. Upon discovering these facts, plaintiff advised defendant of the existence of the above easements, and stated that with the exception of the one set forth under subparagraph (d) *supra,* he could not approve the easements.

7. On about July 1, 1952, plaintiff and defendant reached an oral agreement modifying their prior written understanding in the following particulars: (1) Plaintiff would accept the land subject to the Industrial Fuel Supply Company easement (5d, *supra*); (2) defendant would procure the removal of the other easements; (3) defendant would convey the land to plaintiff by a deed with policy of title insurance containing as exceptions only the approved easement, general and special taxes and two deeds of trust; (4) plaintiff would release $3,500 from escrow, this money to be paid the beneficiaries of the Gorman trust deed to prevent default under said deed and to obtain their consent to the transaction between the parties; and (5) the time for payment of the purchase price and close of escrow was continued until 10 months after the recordation of the subdivision maps.

8. On or about July 1, 1952, plaintiff released $3,500 from escrow, which was paid to the Gorman trust deed beneficiaries, in return for which defendant delivered to plaintiff a second deed of trust upon the property here involved to secure said sum. On October 11, 1952, the consent of the Gormans to the making of the sale on the terms described and to the execution of a new deed of trust to them in satisfaction of their existing deed of trust was obtained. At about the same time, defendant, as an unmarried man, executed and delivered into the escrow a deed to the property here in question.

9. Plaintiff, after accepting the easement of the Industrial Fuel Supply Company, "performed all of the conditions of said sale . . . required of him" and made ready a subdivision map for presentation to the governmental agencies and recordation. However, defendant failed and refused to remove the remaining easements previously described as unacceptable. As a result of defendant's failure to remove the easements not accepted by plaintiff, the subdivision map could neither be presented to the governmental agencies nor recorded.

10. Subsequent to January 24, 1953, defendant sold and deeded the property here involved to a third party.

11. Between April 10, 1952, and January 24, 1953, plaintiff expended approximately $10,000 in doing the engineering and map work necessary for the preparation of the subdivision of the property. On or about January 24, 1953, the property had a reasonable market value of $200,000.

The second count of the third amended complaint realleges all of the above facts. It then adds a single paragraph, alleging that at all times defendant was a married man; that the described realty was community property; that any conveyance thereof executed by defendant without his wife "would not be merchantable, nor would the same be acceptable as the title requisite to a subdivision by the [California] Department of Real Estate" and "would be voidable and subject to the provisions of section 172a of the Civil Code." The prayer is for damages for breach of contract.

As has been indicated, a demurrer to this pleading was sustained with leave to amend. Thereupon, a fourth amended complaint was filed.

### The Fourth Amended Complaint

The fourth amended complaint is entitled "Breach of Contract, Breach of Option and Estoppel." Citrus Homes, Inc., is added as a party plaintiff, pursuant to an allegation that on May 1, 1952, it received an assignment of "a portion and part of [plaintiff's] right, title and interest" in the contract of sale and remains the holder thereof.

The fourth amended complaint, although containing five causes of action, is founded on the transaction previously described. Except for the introduction of the additional party plaintiff, it contains essentially a slight expansion of the facts, embraces an additional legal theory as a basis for relief, and alleges as separate causes of action the concept that defendant is estopped to deny the validity of the agreement for the sale of the property.

The first count of the fourth amended complaint is virtually in all respects a reiteration of the first count of the third amended complaint. Apart from the allegation of Citrus' interest as a partial assignee, the only new matter is an allegation (1) that plaintiffs approved and accepted two of the five easements, instead of merely one, these being the Industrial Fuel Supply easement (5d, *supra*) and an easement to lay and maintain water pipes held by Leffingwell Rancho, Inc. (5b, *supra*); (2) that the Leffingwell easement had been transferred to Harold and Reba Tracy, from whom on August 25, 1952, plaintiffs agreed to purchase for $7,500 three areas of land lying immediately adjacent to the property here in dispute for the purpose of obtaining such easement; and (3) that an additional $2,500 was expended for engineering and mapping the land purchased from Tracys for subdivision purposes.

The second count of this pleading realleges virtually all of the facts of the first count, but describes the written agreement of the parties as an option to buy the property, and omits the allegations that said writing contained the provision that the land would be taken "subject to covenants, conditions, restrictions, reservations, rights, rights of way and easements, if any, appearing of record, and to be approved by the buyers." It is alleged that prior to August 1, 1952, plaintiffs exercised their option to purchase under the agreement as modified and "have performed all of the conditions of said option and purchase," except that the subdivision maps it had prepared could not be recorded because of defendant's failure to remove the easements from the property as agreed.

The third cause of action is simply a reiteration of the second cause of action of the third amended complaint, except for the addition of the new matter previously set out.

The fourth cause of action realleges the allegations of the first count and alleges that prior to plaintiffs' making of the expenditures of $3,500 to the Gormans, $12,500 for engineering and mapping, and $7,500 due under the contract of sale to the Tracys, defendant knew that these expenses would be incurred by plaintiffs and is therefore estopped to deny the validity of the agreement.

The fifth cause of action is also predicated on estoppel as above described but relates to the second count for breach of the option agreement.

Defendant's motion to strike the entire fourth amended complaint was based on the ground that it "adds new and substantially different causes of action and new parties than were included in all prior complaints . . ." This motion was granted. Subsequently, the court, upon reconsideration of defendant's motion to strike the fourth amended complaint, denied the accompanying motion by plaintiffs for leave to file the fourth amended complaint. Plaintiffs assign these rulings as error upon their appeal from the judgment of dismissal. Their position is well taken.

## No Distinct or Different Obligation is Alleged

The governing rule is that where leave to amend is granted, plaintiff is not precluded from adding a new cause of action which supports recovery upon the original obligation sued upon under a different legal theory. (*Barr* v. *Carroll*, 128 Cal.App.2d 23 [274 P.2d 717], collecting the authorities at pp. 26-33.) The inquiry is directed to "whether an

attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant." (*Klopstock* v. *Superior Court*, 17 Cal.2d 13, 20 [108 P.2d 906, 135 A.L.R. 318].) ██ A change of theory regarding the basis of recovery does not constitute a change of the cause of action or the introduction of a new and different action than the one originally alleged. (*Wells* v. *Lloyd*, 6 Cal.2d 70, 88 [56 P.2d 517].) The transaction complained of in the fourth amended complaint is substantially identical to the one set forth in the prior pleading. ██ The principal difference that appears is that the gravamen of count one is characterized as sounding for breach of contract of a sale in the third amended complaint, while the fourth amended complaint alleges virtually the same facts as also constituting breach of an option to purchase. This is merely pleading a different legal basis on which recovery may be predicated and not the injection of a distinct or different obligation as the foundation of liability. Similarly, the added facts upon which are based the allegations that defendant is estopped to assert any invalidity of the agreement do not introduce any new cause of action into the case. They are pleaded wholly in support of the fundamental obligation sued upon and primarily in anticipation of a defense that might otherwise be available to defendant on the face of the pleadings were they barren of such allegations. This type of elaboration of the facts is the legitimate office of the amendment of otherwise defective pleadings. As stated in *Klopstock* v. *Superior Court*, *supra*, at page 20, " 'The most common kinds of amendments are those in which complaints are amended that do not state facts sufficient to constitute a cause of action.' " While it would have been more exemplary practice to include the fourth and fifth causes of action as a part of the first and second counts, respectively, instead of separately realleging the latter counts and adding thereto the facts of estoppel, we are not here concerned with the question of surplusage which thus permeates the pleading, defendant's attack being directed to the issue of incorporation of new and distinct counts by amendment. As we have seen, this contention must fail.

CITRUS HOMES, INC., PROPERLY JOINED

The fourth amended complaint discloses that Citrus Homes, Inc., was the transferee by written assignment of a portion of plaintiff Pruitt's interest in the transaction here involved. Having been given leave to amend, plaintiff was entitled to

join as a party plaintiff a partial assignee of the very obligation sued upon, for not only is there no prejudice sustained by defendant by such procedure but it is to his advantage to have his liability, on a single claim, adjudicated in one suit with all claimants parties to the litigation. (See 2 Witkin, Cal. Proc., §§ 55, 56, 83.) ■■ Where there is no attempt to state a new and different cause of action in an amended complaint, but merely to add a partial assignee as a party plaintiff to secure a complete determination of the original cause of action, the amendment is proper. (See *Curtis* v. *Nye & Nissen*, 86 Cal.App. 507, 513 [261 P. 747].)

For the foregoing reasons, it was an abuse of discretion to strike plaintiff's fourth amended complaint and to deny him leave to file this pleading.

### Sufficiency of Fourth Amended Complaint

It is contended that in any event the fourth amended complaint does not state a cause of action against the defendant, the alleged contract being illusory, and unenforceable under the statute of frauds. This position cannot prevail.

It will be observed at the outset that the written instrument executed by the parties relating to the sale of defendant's property provided that the land is to be taken subject to covenants, easements, etc., "to be approved by the buyers." There is nothing in the writing as pleaded which sets up any objective criterion which in any degree qualifies the buyer's right to withhold approval of any restrictions or easements appearing of record. The buyers are given unrestricted subjective discretion to determine for themselves whether they wish to approve the state of the title so far as existing covenants, conditions, easements, etc., are concerned. In *Lawrence Block Co.* v. *Palston*, 123 Cal.App.2d 300 [266 P.2d 856], an analogous problem was considered with respect to the sale of an apartment building. The prospective purchaser, Neidorf, signed an offer in which he agreed to buy subject to "OPA rent statements *to be approved by buyer*" and "Subject to Buyer's inspection and approval of all apartments." The court held that the buyer's reservation of such untrammelled right of approval did not create a binding agreement but simply constituted an option to purchase. The court stated (p. 308) : "These conditions had the effect of reserving to [Neidorf] the unrestricted discretion to decide whether to be bound or not, even in the event of an unqualified acceptance by the offeree. No standard or basis for these 'approvals' is established. No hint is given as to what criteria,

if any, are to determine whether the O.P.A. rent statements and all the apartments will be approved by the buyer . . . By simply refusing to approve the O.P.A. statements or the apartments Neidorf could withdraw from the agreement. Actually, the Neidorf 'offer' was not an offer to enter into an agreement, but an offer to enter into an agreement if he later wished to do so. This illusory promise is the only offer that is submitted by plaintiff to defendant. When by the terms of an agreement the owner of property binds himself to sell on specified terms, and leaves it discretionary with the other party to the contract whether he will or will not buy, it constitutes simply an optional contract [citing cases]."

These statements apply with equal force to the instant case. Defendant offered to sell his property subject to easements, etc., of record. Plaintiffs did not bind themselves to accept such existing easements but reserved in themselves the right to approve any easements burdening the property. All that the contract amounted to here was an option to purchase defendant's property in the event plaintiffs were satisfied with and approved the existing burdens on the land and signified their acceptance. Until so accepted, the transaction between the parties was a mere *nudum pactum.* However, as the complaint alleges, plaintiffs were not so satisfied and informed defendant in May, 1952, that they could not approve all the easements of record. This, of course, constituted a rejection of the option. Plaintiffs, in turn, offered to proceed with the transaction if defendant would, among other things, agree to effect the removal of three of the easements which were unacceptable to them and extended time for payment of the purchase price until 10 months after the recordation of the subdivision maps. ▮ Under the settled law, the exercise of an option must be unconditional and in accordance with its terms, and an attempt to exercise an option upon terms varying from those offered is tantamount to the rejection of the original offer and the making of a counteroffer. (*Hayward Lbr. & Inv. Co.* v. *Construction Products Corp.,* 117 Cal.App.2d 221, 227 [255 P.2d 473]; *Bourdieu* v. *Baker,* 6 Cal.App.2d 150, 158 [44 P.2d 587].)

It is alleged in the pleading that in July, 1952, the parties orally agreed to a contract for the sale of defendant's property based on the terms previously incorporated in the writing, and further providing, in part, that plaintiff would accept two of the easements of record, that defendant would clear the three unacceptable easements and convey the land by

deed with policy of title insurance showing the land subject only to certain taxes and the accepted easements, that plaintiffs would release $3,500 from escrow to the Gormans to prevent a default under the trust deed, and that the time for close of escrow would be extended until 10 months after the recordation of the subdivision maps. The transaction being for a conveyance of property, the contract fell within the operation of the Statute of Frauds (Civ. Code, § 1624), which declares invalid an agreement for the sale of real property unless the contract, ''or some note or memorandum thereof, is in writing, and subscribed by the party to be charged or by his agent.'' In *Ellis* v. *Klaff,* 96 Cal.App.2d 471, 476-477 [216 P.2d 15], the court states: ''To be sufficient, the required writing must be one 'which states *with reasonable certainty,* (a) each party to the contract . . . and (b) the land, goods or other subject-matter to which the contract relates, and (c) *the terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made' [citation]. Unless the writing, considered alone, expresses the essential terms with sufficient certainty to constitute an enforceable contract, it fails to meet the demands of the statute [citations]. Accordingly, where the statute of frauds, rather than the parol evidence rule is invoked, it follows that recovery may not be predicated upon parol proof of material terms omitted from the written memorandum, even though the oral understanding is entirely consistent with, and in no way tends to vary or contradict, the written instrument. [Citations.] In the words of the Supreme Court, 'The whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence.' [Citation.]'' Since, as we have seen, the original writing was merely an option which plaintiffs did not exercise according to its terms and since plaintiffs must rely on the oral terms subsequently agreed to in order to establish all the material provisions of the alleged contract, it is manifest that there exists no note or memorandum which contains all the essential terms of the agreement to render it enforceable under the statute of frauds. (*Fritz* v. *Mills,* 170 Cal. 449, 458 [150 P. 375]; *Friedman* v. *Bergin,* 22 Cal.2d 535, 539 [140 P.2d 1]; *Ellis* v. *Klaff, supra.*) ▪ Where material or essential terms of a contract within the statute of frauds are not reasonably expressed in a note or memorandum, their absence may not be supplied by parol. (*Friedman* v. *Bergin, supra;*

*Ellis* v. *Klaff, supra*; *Craig* v. *Zelian,* 137 Cal. 105, 106 [69 P. 853].)

But conceding that the contract was within the statute of frauds and that the oral contract was invalid for want of a sufficient note or memorandum reflecting its material terms, defendant, under the circumstances of this case, is estopped to raise the bar of the statute. It is well settled that the facts of a particular case may bring into play an equitable estoppel against the party seeking to set up the statute of frauds and foreclose reliance thereon. (*Seymour* v. *Oelrichs,* 156 Cal. 782, 794-795 [106 P. 88, 134 Am.St.Rep. 154]; *LeBlond* v. *Wolfe,* 83 Cal.App.2d 282, 286 [188 P.2d 278]; *Moore* v. *Day,* 123 Cal.App.2d 134, 138 [266 P.2d 51].)

Succinctly stated, one facet of this principle provides that a defendant will be estopped to set up the bar of the statute whenever he has represented by his words or conduct, that he means to stand by the oral agreement of the parties, and the plaintiff has changed his position to his detriment in reliance thereon. (*Seymour* v. *Oelrichs, supra*; *Le Blond* v. *Wolfe, supra*; *Kaye* v. *Melzer,* 87 Cal.App.2d 299, 306 [197 P.2d 50].) It has found classic expression in the Seymour case, *supra,* where the court states: " 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds . . . The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.' " After an exhaustive examination of the authorities in which a defendant was estopped to assert the statute of frauds to defeat enforcement of an oral contract, the Supreme Court, in *Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623-624 [220 P.2d

737], couched the principles developed by the modern cases in the following language: "The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations. [Citations.]"

The facts alleged in the pleading constitute a perfect case for the application of the doctrine of estoppel. ▉ Accepting as we must the veracity of the allegations of the pleadings, including the statement that plaintiffs have performed all the conditions of the contract of sale,[2] the following factual context emerges in both the first and second causes of action: The parties opened an escrow to consummate their transaction. When the oral agreement of July 1, 1952, was arrived at, plaintiffs released $3,500 from this escrow to the Gormans to avert default by defendant under the deed of trust. Defendant executed a second trust deed in favor of plaintiffs to secure this amount. In October, 1952, defendant deposited a deed in escrow, clearly susceptible of a representation by conduct that he proposed to stand upon the oral contract. Plaintiffs expended large sums of money in reliance on the contract for engineering work and the preparation of subdivision maps. Plaintiffs contracted to purchase land in order to remove an easement from the property. Plaintiffs complied with various obligations of the agreement, which included payment of $17,500 to the Gormans and the execution of a new

---

[2]Except for full payment of the purchase price, which was not due until 10 months after recordation of the maps. Recordation was prevented by defendant's failure to remove the easements. "Defendant having excluded by its own remissness the materialization of the contractual objectives, it cannot take advantage of such act to defeat its liability to plaintiff." (*Richardson* v. *Walter Land Co.*, 118 Cal.App. 2d 459, 464 [282 P.2d 42].)

second deed of trust to them of approximately $25,000 in satisfaction of the outstanding deed of trust. In 1953, when the reasonable market value of the property was $200,000, a sum far in excess of the price agreed on by the parties, defendant sold the property to some third party. The aggregate effect of these facts is to establish an implied representation by defendant that he proposed to stand by the oral agreement, a substantially detrimental change of position by plaintiffs in pursuance of the contractual objectives induced by defendant's conduct; an unconscionable injury to plaintiffs if the oral agreement were not recognized as valid, and an unjust enrichment to defendant if he could escape its obligations. The elements of estoppel referred to in *Monarco* v. *Lo Greco, supra,* being present in copious measure, the oral contract is lifted out of the bar of the statute of frauds by the pleadings.

The fourth and fifth causes of action are essentially repetitious of the first and second counts, but add the allegation that defendant knew prior to plaintiffs' making the various expenditures alleged that such expenditures would be made and specifically invoked the doctrine of estoppel, only the facts of which are related in the previous counts. This added allegation aggravates a situation which, as has been shown, already cries loudly for the application of an estoppel, establishing as it does defendant's knowledge of and silent acquiescence in plaintiffs' severely disadvantageous change of position under the oral contract. Though a more adept pleading would incorporate these allegations into the first and second counts rather than encumbering the complaint with separate statements of estoppel, for present purposes we must hold that those counts sufficiently allege causes of action.

For the foregoing reasons, it is clear that the allegations of the first, second, fourth and fifth counts sufficiently allege a cause of action in plaintiffs. We do not decide, however, that these counts may not be subject to special demurrer, and the court may, in its discretion, require the clarification of uncertainties or ambiguities, if any, therein appearing. (See *Stowe* v. *Fritzie Hotels, Inc.,* 44 Cal.2d 416, 425 [282 P.2d 890].)

Turning now to the third cause of action, we find, apart from a reallegation of the first count previously described, the addition of one paragraph which asserts that at all times mentioned defendant was married, that the land involved was community property, and that any conveyance thereof exe-

cuted by defendant without his wife would be unmerchantable, voidable under Civil Code, section 172a, and unacceptable as a title requisite to a subdivision by the California Division of Real Estate. This count adds no significant factor to the pleadings and is fundamentally a mere duplication of the first count. In its present posture, the third count essentially alleges that defendant in effect contracted to convey community property as if he had sole title to it. ▮ It is well settled that a person may legitimately contract to sell real property which he does not own provided that when the time comes to furnish the title as agreed he is able to do so. (*Wheat* v. *Thomas*, 209 Cal. 306, 316 [287 P. 102] ; *Hanson* v. *Fox*, 155 Cal. 106 [99 P. 489, 132 Am.St.Rep. 72, 20 L.R.A. N.S. 338] ; *Backman* v. *Park*, 157 Cal. 607, 610 [108 P. 686, 137 Am.St.Rep. 153].) ▮ Plaintiffs suggest that this count should be treated as the allegation of a perpetration of a fraud upon them. But this count cannot be viewed in such light, there being not the slightest intimation in the complaint that plaintiffs were purporting to state a count sounding in fraud. Not only is the complaint entitled "Breach of Contract, Breach of Option and Estoppel" (which, of course, standing alone, is not controlling), but it is conspicuous in not once using the words fraud, fraudulent, misrepresentation, or any other term implying deceit in describing defendant's conduct. As stated in *Anderson* v. *Willson*, 48 Cal.App. 289, 294 [191 P. 1016] : "[Defendant's] contract will not be held fraudulent . . . by virtue of the mere fact that, when he made it, he did not have the title that he agreed to pass to his vendee." Furthermore, this count has other obvious and basic defects as a pleading of fraud. There are no allegations that plaintiffs did not know defendant was a married man, that they were ignorant that the property in question was community property or that they relied on any misrepresentation made by defendant regarding ownership of the land or the state of the title. (*Senter* v. *Monroe*, 77 Cal. 347, 350 [19 P. 580].) There is no indication or allegation that defendant would not or could not obtain his wife's agreement to the conveyance of the alleged community property or that he would not obtain a conveyance of her interest in the property to himself prior to the time fixed for performance. Furthermore, there is no showing in the pleading of any damage sustained as a direct result of any misrepresentation by defendant (*Woodson* v. *Winchester*, 16 Cal.App. 472, 476 [117 P. 565] ; *Swasey* v. *de L'Etanche*, 17 Cal.App.2d 713, 719

[62 P.2d 753]); the only damage alleged is that flowing from a breach of contract rather than from the practice of an actionable fraud. For the various reasons pointed out, the third count is fatally deficient as sounding in fraud, and mere surplusage in any other sense.

The judgment of dismissal and the order striking plaintiffs' complaint are reversed, with directions that the trial court entertain proceedings in accord with the views here expressed. The order denying plaintiffs' leave to file their fourth amended complaint being nonappealable, the attempted appeal therefrom is dismissed.

Moore, P. J., and Ashburn, J., concurred.