[Civ. No. 17180. First Dist., Div. Two. July 22, 1957.]

CENTRAL MUTUAL INSURANCE COMPANY (a Corporation), Respondent, v. MAX SCHMIDT, Appellant.

Freed & Freed, Eli Freed and Eugene A. Mash for Appellant.

Hans Kruger and George L. Cooke for Respondent.

O'DONNELL, J. pro tem.*—This is an appeal by defendant from a judgment awarding plaintiff $5,000 damages for fraud allegedly practiced by defendant on plaintiff in connection with a sale of real property.

It appears that on October 25, 1950, Allan Werchick, plaintiff's assignor, and Meadow Glen Investment Company, Inc., a corporation (hereinafter called the company), entered into a written contract of sale whereunder the company agreed to sell and Werchick agreed to buy certain residence premises in Millbrae, San Mateo County, for the sum of $15,000. The contract was signed by defendant Schmidt in his capacity as president of the company. The transaction was consummated on November 18, 1950, at which time the title to the property was conveyed to Werchick, the conveyance being executed by defendant as grantor, individually. The sale had been negotiated on behalf of the company by Ludwig Realtors, the real estate agents for the company.

---

*Assigned by Chairman of Judicial Council.

It further appears that in the year 1948 defendant had entered into a contract with the company by which, among other things, he conveyed a parcel of land known as Meadow Glen Subdivision (of which the subject property is a part) to the company. The contract provides that record title to the subdivision shall remain in the defendant for an indefinite period of time in order that certain loan arrangements theretofore made by defendant should not be disturbed. By further terms of the contract, defendant agreed to execute the necessary conveyances of parcels of the subdivision that should from time to time be sold. The contract further provides that all such sales shall be deemed to be made by and on behalf of the company and that it shall be entitled to all proceeds of sales. This contract was never recorded.

Approximately one year after Werchick bought the subject property the dwelling began to subside, causing cracks and breaks in the walls, and unevenness in the floors. The evidence disclosed that the house was built on a fill, that the fill had not been properly made, and that this caused the subsidence of the soil and resulting damage to the dwelling. Defendant had been aware of the existence of the fill, but neither he nor Ludwig Realtors informed Werchick of it. The latter did not learn of it until after the house began to subside.

The theory of tortious conduct on which the case was tried, and judgment awarding plaintiff damages rendered, is that where a vendor has knowledge of facts which affect the value or desirability of property which is the subject of sale, and the vendee has no such knowledge and no reasonable means of acquiring such knowledge, it becomes the vendor's affirmative duty to make disclosure of such facts to his vendee; and his failure so to do constitutes actionable fraud. Unquestionably, this is the law in California. (*Clauser* v. *Taylor*, 44 Cal.App.2d 453 [112 P.2d 661]; *Herzog* v. *Capital Co.*, 27 Cal.2d 349 [164 P.2d 8]; *Dyke* v. *Zaiser*, 80 Cal.App.2d 639 [182 P.2d 344].) Defendant does not dispute this rule of law. His contention is, rather, that the company, not he, was the vendor in the subject transaction and that the mere fact that he, individually, executed the conveyance to Werchick does not constitute him the vendor. Plaintiff, on the other hand, asserts that the very fact that defendant executed the deed in his individual capacity of itself constitutes defendant the vendor and subjects him to a vendor's liability.

Only those persons who in some way participate in the

fraud or who knowingly accept the fruits thereof can be held liable in damages therefor. (23 Cal.Jur.2d, Fraud and Deceit, § 47; *McClung* v. *Watt*, 190 Cal. 155 [211 P. 17].) In the instant case there is nothing in the record to indicate that defendant in any way personally profited from the transaction. The problem is thus confined to a determination of whether or not defendant participated in the fraud that was practiced on Werchick.

Insofar as the contract of sale is concerned defendant executed that instrument in his representative capacity. He is not personally a party to it. Therefore, any liability that might arise solely by virtue of the creation of that contract would be the liability of the company alone. Nor would the fact that defendant held title to the property and executed the conveyance thereof, of itself inculpate him. Such a situation was presented in *Bahen* v. *Furley*, 44 Cal.App. 134 [186 P. 185]. The court in reversing a judgment for damages for deceit against Brown, one of the defendants in the case, had this to say (p. 137) : "The defendant Brown testified as follows: 'I am a resident of Santa Monica, and one of the defendants in this case. Mr. Plumer came to me in the spring of 1913 and said that he and Furley and Koontz wanted me to let them have a piece of property deeded to me. I agreed to do so, and that I would deed it whenever they all told me to. I did so. I never received anything for it.' The record discloses nothing further. The transaction was in itself not illegal. It was, perhaps, out of the ordinary, as honest men deal with one another. It would seem that a prudent man, by the very suggestion of such an arrangement, would have asked some questions as to why they wanted this done. Does the law impose some duty upon one in this position? Does the failure to so exercise that duty subject him to the same liability as though he knew? Does the law impute to him knowledge of facts which might have been his had he made inquiry? Defendant Brown did not participate in any of the proceeds; he made no false representations; he practiced no deceit; he did not conspire or authorize others to practice deceit. Unless the answer to the questions just submitted be in the affirmative, it would seem that because of the part which he took in this transaction he cannot be subjected to liability for damages." And on page 138 the court said: "The burden of proof to show Brown's knowledge of the fraud was on plaintiff, and has not been met. It was not incumbent upon this defendant to prove his innocence."

And in *Montgomery* v. *Meyerstein*, 186 Cal. 459 [199 P. 800], it was held that one who joins in the execution of a contract of sale merely as an accommodation in order to eliminate any possible cloud on the title to the property being sold, is not liable to the vendee for fraud practiced on the vendee by the vendor.

Nor is the fact that the company did not hold title to the property at the time of execution of the contract or sale of any consequence in determining defendant's liability. ■ One may validly contract to sell property to which he does not hold even inchoate title. (*Backman* v. *Park*, 157 Cal. 607 [108 P. 686, 137 Am.St.Rep. 153]; *Hanson* v. *Fox*, 155 Cal. 106 [99 P. 489, 132 Am.St.Rep. 72, 20 L.R.A.N.S. 338]; *Anderson* v. *Willson*, 48 Cal.App. 289 [191 P. 1016]; *Pruitt* v. *Fontana*, 143 Cal.App.2d 675, 690 [300 P.2d 371].) Werchick could have insisted on a title deraigned through the company. (Backman case, *supra.*)

Plaintiff next says that even though defendant may not be liable as a principal in the transaction he actively took part therein as the company's representative and is thus liable to plaintiff under the settled rule that an agent is personally liable for his own torts notwithstanding such torts are committed in the execution of his principal's business. (*Stirnus* v. *Adams*, 50 Cal.App. 730 [195 P. 955]; 2 Cal.Jur.2d, Agency, § 136; 13 Cal.Jur.2d, Corporations, § 353.) Speaking of this rule the court in *Thomsen* v. *Culver City Motor Co., Inc.*, 4 Cal.App.2d 639 [41 P.2d 597], said: "While it is true, of course, that directors and officers of a corporation are liable equally with the corporation for its torts in which they participate, it is equally true that if they do not participate therein, and if they are guilty of no culpable negligence in allowing the commission of the wrongful acts, they are not liable."

It will be recalled that Ludwig Realtors handled all of the sale negotiations for the company. Defendant, as president of the company, was the company's agent. Ludwig Realtors was a subagent. ■ A corporate officer or agent is not liable for the acts of lawfully appointed subagents. (Civ. Code, § 2351; *Hilton* v. *Oliver*, 204 Cal. 535 [269 P. 425, 61 A.L.R. 297]; *Malloy* v. *Fong*, 37 Cal.2d 356, 378 [232 P.2d 241].)

■ The instant case comes down to this critical question: Does an agent who executes a contract of sale on behalf of his principal incur personal liability to the vendee for failure to disclose to the latter latent material facts? We

have found no decision which discusses this precise problem. We think the answer to the question must depend on the surrounding circumstances, and that the question is therefore primarily a question of fact. This would involve inquiry into the extent of the agent's participation in the sale, and whether or not such participation was sufficient to place upon him personally the affirmative duty of making full disclosure of the facts to the vendee. In other words, the presence or absence of a duty to disclose, and consequent personal liability or nonliability depends on the extent of the agent's involvement in the whole transaction.

But this factual issue has not been resolved in the instant case. The findings of the trial court are merely to the effect that defendant himself contracted to sell (which, as we have seen, he did not do) the property to Werchick. The trial court is, of course, the proper forum for the determination of this issue of fact. The cause must therefore be remanded for trial of this issue.

Some comment should be made on plaintiff's contention that the 1948 contract between defendant and the company is void as to plaintiff because not recorded. (Civ. Code, § 1214.) The recording statutes are not involved here. The question of defendant's liability to plaintiff depends not at all on the validity of the 1948 contract, but on defendant's participation in the transaction which led to plaintiff's being wronged.

Inasmuch as the cause must be remanded for a new trial we should also consider defendant's contention that the trial court adopted an erroneous measure of damages. The trial court found that the reasonable cost of repairing the damage to the dwelling resulting from its subsidence was the sum of $7,324.75 and predicated its judgment of damages thereon. (Judgment was limited to the sum of $5,000 because that was the extent of the assignment of the cause of action by Werchick to plaintiff.) The proper measure of damages in fraud cases is declared in section 3343 of the Civil Code which provides: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction. . . ." That section provides the exclusive measure of damages for fraud cases. (*Bagdasarian* v. *Gragnon*, 31 Cal. 2d 744, 762 [192 P.2d 935].) While cost of repairs has some probative worth on the issue of value, it is not of itself

the proper measure of damages. (*Cleland* v. *Thornton*, 43 Cal. 437; *Williams* v. *Faria*, 112 Cal.App. 455 [297 P. 78]; *Nelson* v. *Marks*, 126 Cal.App.2d 261 [271 P.2d 900].)

The judgment is reversed.

Dooling, Acting P. J., and Draper, J., concurred.