[Civ. No. 18872. First Dist., Div. One. May 20, 1960.]

BEN-HUR MANUFACTURING COMPANY (a Corporation), Respondent v. EMPIRE FACTORS (a Corporation, Appellant.

124

Maurice E. Gibson for Appellant.

Sedgwick, Detert, Moran & Arnold for Respondent.

TOBRINER, J.—Appellant Empire Factors Corporation appeals from a judgment holding it liable for payment for freezers which, pursuant to an oral agreement between appellant and respondent, respondent shipped to McCormack Corporation and for which it sent invoices to appellant. Appellant claims respondent's judgment cannot stand because, first, the oral contract succumbs to the statute of frauds and, second, the court erroneously permitted respondent, after the expiration of the period of limitations, to amend its complaint, which originally alleged a common count for moneys received for the use and benefit of plaintiff, to include a cause for goods sold and delivered. These are the basic defenses to the judgment; they raise technical objections which can stand neither upon strict application of the law nor the inherent fundamental equities. Appellant's two subsidiary objections that the demurrer to the fourth cause should have been sustained and that the testimony as to the delivery of the goods fell outside the issues do not improve its position.

Respondent Ben-Hur Manufacturing Company devoted its

plant at Milwaukee, Wisconsin, to the manufacture of freezers. Prior to the spring of 1955 it partly distributed its freezers through the San Francisco firm of McCormack Corporation. In the fall of 1955 Ben-Hur's credit manager, Mr. Denger, discovered McCormack had suffered heavy financial losses and concluded not to extend to it further credit. Shortly thereafter Empire Factors' general manager, Mr. Ludlam, contacted Denger at Milwaukee, telling Denger that Empire Factors would be willing to guarantee the account of McCormack; that Empire Factors was working very closely with McCormack; that he personally was watching and directing McCormack. In response to Denger's observation that a guarantee would have to be embodied in a formal written agreement, Ludlam suggested "that it would be acceptable to Empire Factors if . . . [Ben-Hur] were to invoice Empire Factors direct for these shipments."

Respondent shipped the freezers to McCormack and sent invoices to appellant. At the trial the court admitted the invoices into evidence despite appellant's objection that their "introduction . . . departs . . . from the issues raised by the pleadings. . . ." However, the invoices were explanatory of the bill of particulars filed by respondent in response to the demand of appellant. Appellant did not object to the admission of the bill of particulars.

Appellant's Ludlam admitted that the invoices represented specified carloads of freezers for which he had authorized payment "by Empire Factors." The payments, however, according to respondent's Denger, "came from McCormack Corporation." Ludlam further testified that Empire Factors did not make the payments; that it "did not pay these invoices or statements direct" but "[w]e paid against the trust receipts to McCormack Corporation." To the question of respondent's attorney, "So that the money is channeled or funneled through McCormack Corporation back to Ben-Hur?" Ludlam replied, "That's right." As to the partial payments of invoices, the treasurer of McCormack, Mr. Hansen, testified that the payments were made with McCormack checks which he had signed and which were drawn on the McCormack bank account; that the money in the account came from the sale of freezers described in the invoices. Hansen affirmatively answered the query that the money "came . . . through Empire Factors into the McCormack Bank Account? . . . So the money substantially came from Empire Factors?"

At the close of the case the trial court posed the question,

"Why doesn't Empire owe this money? There is no denial by Mr. Ludlam that he said, 'Bill me,' and he was billed and there is an amount unpaid. What more could you have?" To appellant's response "Ben-Hur billed McCormack Corporation . . . ," the trial court rejoined, "Why would that take out Empire? They were being invoiced right along too." Appellant's counsel objected that the "substance of the complaint" was "to collect moneys which the defendant has in its possession which is unconscionable for him to keep . . . and yet we have gone ahead and tried this case on the theory that some goods were sold to Empire Factors. If that is the theory of the case why . . . didn't he plead goods sold and delivered. If he pleaded that we would never have had this case."

The court permitted an amendment to the pleading to set out a cause for goods sold and delivered. The original complaint consisted of three causes of action: (1) that appellant received for the "use and benefit of . . . plaintiff . . . the sum of $8,807.94 . . . demand has been made upon . . . defendants . . . for the repayment of said sum . . . ," (2) "an account stated as between plaintiff and defendants . . . ," (3) said defendants "became indebted to plaintiff upon an open book account. . . ." Appellant's answer denied these allegations. After the conclusion of the trial respondent moved to reopen the case and file the amendment to the complaint; the court, over appellant's objection, granted the motion. As a fourth cause of action the amendment set forth, "That on or about October 13, 1955, said defendant orally promised to pay plaintiff herein for and on account of certain goods shipped and delivered on its behalf to one McCormack Corporation; . . . that said goods were duly shipped and delivered and portions thereof paid for on behalf of defendant; that the . . . balance due on said account, has not been paid after demand and remains due and owing. . . ."

Appellant first demurred to the fourth cause, pleading the defenses of the statute of limitations and the statute of frauds; when the court overruled the demurrer appellant answered, setting forth the same defenses and admitting that "on or about October 13, 1955, . . . defendant orally promised to pay plaintiff for and on account of that certain merchandise set forth in the bill of particulars . . . other than the merchandise set forth therein under Invoice No. 11497; and . . . that the merchandise specified in said bill of particulars was shipped by plaintiff to McCormack Corporation. . . ."

The trial court gave judgment to respondent, rendering findings that appellant "received for the use and benefit of plaintiff herein the sum of $7,720.15. That nothing remains to be done on the transaction between plaintiff and defendant except the payment of money from defendant to plaintiff." The court further found that defendant "orally promised to pay plaintiff" for the merchandise described in the bill of particulars; that the merchandise "was shipped to McCormack Corporation on behalf of said defendant . . . and was paid for in part by said defendant."

The issues resolve into the applicability of the statute of frauds and the propriety of the amendment adding the count for goods sold and delivered. Since the evidence and the findings establish the acceptance of the freezers by appellant through the agency of McCormack Corporation, we believe the statute inapplicable. This conclusion renders unnecessary a discussion of the additional reason for such inapplicability in the fact found by the trial court that appellant "paid . . . in part" the purchase price of the freezers.

Appellant's contention that the findings fail to save respondent's cause from the statute of frauds[1] overlooks the import of the evidence and the scope of the findings. The findings state in part that "the merchandise . . . was shipped to McCormack Corporation *on behalf* of said defendant. . . ." (Italics added.) This finding accords with respondent's fourth cause, that "said goods were duly shipped and delivered and portions thereof paid for on behalf of defendant. . . ."

The finding of the shipment to McCormack Corporation "on behalf of . . . [appellant]" establishes McCormack's agency to receive and accept such shipment. The parties do not dispute the fact that the freezers were so delivered on appellant's behalf. The record demonstrates that appellant not only instructed such shipments on its behalf, but that it was "directing" McCormack. Nothing whatsoever in the record indicates any failure of McCormack to accept the goods on behalf

---

[1] "A contract to sell or a sale of any goods . . . of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer shall accept part of the goods . . . and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. . . . (3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods." (Cal. Code Civ. Proc., § 1973a; Cal. Civ. Code, §§ 1624a and 1724.)

of appellant. To the contrary the subsequent conduct of appellant in accepting trust receipts from McCormack serves both as its ratification of the acceptance and "assent to becoming the owner of those specific goods." (Civ. Code, § 1624a.) We find the record sufficient to conclude that upon the facts McCormack acted as appellant's agent in receiving and accepting the freezers.

The cases are clear that acceptance of goods by one designated to do so on behalf of the buyer sufficiently satisfies the requirements of the statute. A contrary constriction of acceptance to a literal physical delivery to the buyer only would ignore common practice; delivery and acceptance to the party directed by the buyer for and on its behalf is a frequent characteristic of daily commercial operations.

The California cases sustain the position that acceptance by an agent of the buyer meets the requirement of the statute. Thus in *Leavens* v. *Pinkham & McKevitt* (1912), 164 Cal. 242 [128 P. 399], Hand, an agent of the defendant for certain purposes, entered into several contracts purportedly on behalf of defendant. Though Hand lacked actual authority the court held defendant liable on these contracts because of Hand's ostensible authority. Defendant raised the defense of the statute of frauds to one of these contracts; in rejecting it the Supreme Court stated: "There is nothing in the point that the contract . . . is unenforceable because not in writing. If as to him Hand was authorized to enter into a contract binding on defendant for the purchase of the fruit, his acceptance of such fruit was a sufficient acceptance by defendant to obviate any objection based on the statute of frauds. (Civ. Code, § 1624, subd. 4.)"[2] (Pp. 249-250.) *Midwest Air Filters Pacific, Inc.* v. *Finn* (1927), 201 Cal. 587 [258 P. 382], also involved the contention that the statute of frauds voided a contract for the sale of goods; there, the Supreme Court similarly stated: "The record in the instant case discloses that the respondent corporation had not only paid a part of the contract price of the automobile but had accepted delivery of said vehicle *through its authorized agent*. The provisions of the statute of frauds (Civ. Code, § 1624, subd. 4) were therefore satisfied." (P. 595; italics added.) To the same effect: *Suverkrup* v. *Suhl* (1951), 108 Cal.App.2d 284, 287 [238 P.2d 674].

[2]"1624. The following contracts are invalid, unless the same . . . is in writing. . . .

"4. An agreement for the sale of goods . . . at a price not less than two hundred dollars, unless the buyer accepts or receives part of such goods. . . ." (Stats. 1905, ch. CDLII, p. 611.)

The Vermont case of *Newport Grain Store* v. *Bergeron* (1948), 115 Vt. 283 [57 A.2d 123], parallels the instant one. There defendant arranged with the manager of plaintiff's store to deliver grain to "one Gerald Conley who had just purchased the defendant's farm. . . ." (P. 124.) Defendant "said he was putting his cows on the farm and would be responsible for the feed delivered to Conley." (Id.) Plaintiff delivered the grain. When he attempted to collect the price defendant raised the statute of frauds of Vermont (P.L. 1675 and 1676) providing that a contract for the sale of goods of $50 or more "shall not be valid, unless the purchaser accepts and receives part of the goods so sold." (P. 125.) To defendant's contention that despite the admitted delivery, the evidence did not show "that he authorized Conley to receive and accept the grain" the court states, "The evidence shows without dispute unqualified authority from the defendant to the plaintiff to deliver the grain to Conley and thus the consequent authority on the part of Conley to receive it." The court further holds, "Receipt and acceptance by an authorized agent binds the principal. *Burlington Grocery Co.* v. *McGreggs*, 97 Vt. 63, 71 [122 A. 479]. That there was an acceptance is beyond question. There is no evidence that either the defendant or Conley made any complaint about the quality or weight of the grain delivered or, indeed, any complaint concerning it." (P. 126.) Conley's receipt and acceptance of the grain as agent for defendant in the cited case corresponds to the instant receipt and acceptance of the freezers by McCormack.

Appellant's second claim that the amended complaint establishes a new cause of action, and that its *nunc pro tunc* filing after the duration of the period of the statute of limitations worked error, cannot stand against the right to change the form of a pleading under such circumstances as those presented here.

Many cases state the principle that a party may properly file an amended complaint alleging a cause otherwise barred by the statute when such amended complaint does not alter the facts composing the basic right or wrong of the action but merely projects a different legal theory for redress.

To this the courts append the corollary proposition that a party may not introduce a new theory to the surprise or prejudice of his adversary without offering him an opportunity to meet it. (2 Witkin, California Procedure, p. 1623.) Thus in *Wennerholm* v. *Stanford University School of Medi-*

*cine* (1942), 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358], an amended complaint charging fraud, instead of negligence, in publishing untrue statements as to the harmlessness of an obesity drug, withstood the objection that it alleged a new cause of action barred by the statute of limitations. The Supreme Court held, "The modern rule, where amendment is sought after the statute of limitations has run, is that the amended complaint will be deemed filed as of the date of the original complaint . . . upon the same general set of facts." (P. 718.)

The recent decision of the Third District Court of Appeal in granting a writ of mandate to compel the respondent court to permit a plaintiff to file an amended complaint which alleged willful and wanton misconduct in the place of an original allegation of mere negligence points out that " [w]hen the basic facts are the same a mere change in the legal theory underlying the plaintiff's complaint will not subject the amended complaint to the bar of the statute of limitations." (*Saari* v. *Superior Court* (1960), 178 Cal.App.2d 175, 178-179 [2 Cal.Rptr. 856].) Closer to the instant case is *Wyndham, Inc.* v. *Wilmington Trust Co.* (1948) 44 Del. 299 [58 A.2d 419], which involved a situation in which a complaint consisted of common counts for money had and received but the evidence disclosed only an account " 'for money lent and advanced, paid, laid out and expended.' " In permitting leave to amend, the court states, "Plaintiff is not even attempting to change the form of action but only the particular category of common counts. It is not the function of common counts to narrate the facts upon which liability is predicated. Their informative function is little more than to indicate that the cause of action falls within the particular classification of contract actions." (P. 420.)

 Appellant would contort an amendment of pleadings falling within the generic term of common count into a radically different cause. In answer to respondent's argument that a common count lies to enforce an agreement as to which plaintiff has performed all obligations and no more remains to be performed than payment, appellant refers to the following quotation in 5 California Jurisprudence 2d 539 : " 'One recognized exception to the general rule that the plaintiff must declare specially upon an express contract arises where a party to a special contract has performed his part, and nothing remains to be performed but the payment of the money due him on the contract. Under such circumstances, he can main-

tain an action on the *appropriate* common count to recover the amount due.' (Emphasis supplied.)'' Appellant then contends that there is an appropriate common count for goods sold and delivered and such common count necessarily differs from the common count pleaded. Appellant hence admits that the fourth and first causes are no more than members of the family of common count.

While no California case applies the common count of money had and received to the collection of the amount due for goods sold and delivered, the authorities at the minimum disclose the common origin and similarity of the former and latter counts. *Ferro* v. *Citizens Nat. Trust & Sav. Bank* (1955), 44 Cal.2d 401 [282 P.2d 849], points out that "if the plaintiff owes no further performance under the contract and nothing remains to be done thereunder except the payment of money by the defendant . . . [p]ayment can then be recovered under a complaint stating a common count for money had and received." (P. 409.) See also *Castagnino* v. *Balletta* (1889), 82 Cal. 250, 257-258 [23 P. 127]. In illustrating the type of cause to which common count applies, Lord Mansfield in *Moses* v. *Macfarlan* (1760), 2 Burr 1005, 97 English Reports 676, mentions the payment of money by mistake, the payment of money upon a consideration which fails, the acquisition of money through extortion, operation or undue advantage and sums up, " '. . . In one word the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.' " (*Philpott* v. *Superior Court* (1934), 1 Cal.2d 512, 518-519 [36 P.2d 635, 95 A.L.R. 990].) See also *Minor* v. *Baldridge* (1898), 123 Cal. 187, 190-191 [55 P. 783]; *Fox* v. *Monahan* (1908), 8 Cal.App. 707, 709 [97 P. 765]; 14 So.Cal. L.Rev. (1940-1941), 288, 310.

We cannot hold here that respondent by the amendment introduced a radically different cause of action; it fell within the generality of the pleaded cause; respondent seeks redress for the wrong which arose from the "general state of facts" (*Wennerholm* v. *Stanford University School of Medicine, supra* (1942), 20 Cal.2d 713, 718), which generated the first cause. These facts embrace the promise of appellant to pay for freezers shipped by respondent to McCormack Corporation which gave rise to the original complaint. While a cause of action may be garbed in cloaks of many different colors, the cloak does not create the issue. Here the issue, and the basic

132

facts, comprise the attempt of respondent to collect the money it claims to be due to it for the sale of freezers.

No one deluded appellant as to the issue projected by the "general set of facts" or as to the basic nature of respondent's contention. Appellant's general manager received, and admitted receipt of, the invoices listed in the bill of particulars. The bill of particulars described the invoices. ▮▮▮ It is axiomatic that a bill of particulars "is in the nature of an amplification of the pleading to which it relates, and is to be construed as part of it for certain purposes" *Ames* v. *Bell* (1907), 5 Cal.App.1, 4 [89 P. 619] ; see also *Edelman* v. *McDonell* (1899), 126 Cal. 210, 213 [58 P. 528] ; " its purpose [is] . . . to apprise defendant of the specific demand of his adversary . . . " (*Campbell* v. *Rice* (1913), 22 Cal.App. 734, 737 [136 P. 512]). ▮▮▮ In the pretrial conference respondent described the action to be one for the recovery of the purchase price of freezers manufactured by respondent and delivered to appellant. Appellant can make no valid claim of surprise or unfairness on the part of respondent.

We have surely outgrown that stage of formalism in the law when each pleading congealed into an immutable and fixed document. As Pound points out, technical procedure "is a remnant of the mechanical modes of trial in the beginnings of our law, developed in the 18th century in an age of formal overrefinement. . . ." (The Spirit of the Common Law, p. 128.) Repugnance to this rigidity inspired the observation in *Buxbom* v. *Smith* (1944), 23 Cal.2d 535, 542 [145 P.2d 305] : "While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms." Since the amended complaint merely stated a different theory for recovery on the same general state of facts and since appellant suffered no surprise or prejudice by its introduction, the refusal of a court to permit it would have been a retreat into an atavistic concept of procedure.

Appellant's objections that the demurrer to the fourth cause of action should have been sustained without leave to amend and that testimony as to the delivery of the goods fell beyond the issues fail in the light of the above discussion.

Appellant's case is a composition in dual rigidities. It would rigidly apply the bar of the statute of frauds because the goods were accepted by the agent of the buyer instead of the

buyer itself. It would rigidly prevent respondent from filing an amended complaint to state the theory of the case upon which respondent relies. Neither of these rigidities find support in the cases or in that common sense which expects that claims for moneys due for the sale of goods will be enforced in courts of law.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied June 13, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1960.