[Civ. No. 31976. Second Dist., Div. One. Dec. 3, 1968.]

J. HOMER OVERHOLSER, Plaintiff and Respondent,
JOHN D. GLYNN, Defendant and Appellant.

John D. Glynn, in pro per., Hill, Farrer & Burrill and Jack R. White for Defendant and Appellant.

A. A. Rotberg for Plaintiff and Respondent.

FOURT, J.—John D. Glynn, a former stockholder in Bonus Rent-A-Car System, Inc. (hereinafter sometimes referred to as Bonus) and one of the coguarantors on certain promissory notes payable by Bonus to Community Bank, appeals from a judgment entered against him for his proportionate share of that obligation.

It appears that in 1961 plaintiff Overholser and defendants Klavir, Freemond, Keltner, Glynn and Maizlish were stockholders of Bonus, a corporation engaged in the automobile rental business. Bonus financed its automobile purchases through Community Bank with promissory notes secured by chattel mortgages on the vehicles. In order to provide additional security for these obligations, the six above-named Bonus shareholders executed as individuals separate continuing guarantees.

Bonus defaulted in the payment of its obligations and Community Bank notified Bonus and the individual shareholder-guarantors of the default and demanded surrender of the automobiles. The bank also obtained bids on these automobiles from dealers and calculated that a deficiency of about $30,000 would remain after dealer prices were credited against the balance owing on the Bonus account. All parties concerned, however, believed that if the automobiles were instead sold at retail, the deficiency could be reduced by approximately one-half. Therefore, Community Bank agreed that, in consideration of the deposit of cash or additional acceptable collateral security in the amount of about $15,000, it would release the automobiles to the Bonus shareholders for retail sale. Accordingly, Overholser, the only shareholder who possessed collateral acceptable to the bank, on August 14, 1962, deposited with the bank on behalf of the guarantors listed securities valued at $15,000. In this manner, Overholser and the defendants obtained the release of the automobiles for liquidation sale.

All of the automobiles except one were subsequently sold by the Bonus shareholders. The net proceeds were paid to Community Bank which credited these sums to the Bonus obliga-

tion. Glynn retained one of the automobiles and gave the Community Bank his promissory note for $1,000 payable August 30, 1962, in consideration of the purchase price. On September 7, 1962, Glynn wrote to the bank advising them that he was deferring payment until on or about September 11, 1962, in order to obtain the necessary signature of one of the Bonus officers on the pink slip. Glynn, however, never paid this obligation.

In June 1963 the unpaid deficiency on the guaranteed Bonus obligation was $17,150.73. On June 12, 1963, the bank liquidated the securities pledged by Overholser and credited the $16,988 thus obtained to the Bonus indebtedness. On July 2, 1963, Overholser gave the bank an additional $162.73 in cash to satisfy the Bonus obligation in full. The Community Bank thereupon assigned to Overholser the obligations secured by the shareholder guarantees as well as the unpaid Glynn note.

On July 23, 1963, Overholser instituted the present action against the other guarantor-shareholders of Bonus to obtain payment of their respective proportionate shares of the Bonus debt. At that time Klavir was not a resident of the United States and could not be served. Maizlish obtained a summary judgment on the basis of an indemnity agreement executed in his favor by Glynn and others. Keltner answered alleging that Overholser had agreed to limit Keltner's liability to 10 percent of the total debt. Freemond by answer alleged inter alia that each of the other defendants was liable jointly and severally on the same obligation and the action was dismissed as to this defendant when he paid $4,750 prior to trial. Glynn by answer alleged among other things that Overholser was not entitled to recover because he had been liable on the same obligation and in the same manner as the other shareholders. Although Overholser originally stated a cause of action as the assignee of the bank, on November 19, 1965, he made a motion to amend his pleadings. This motion was granted on December 10, 1965, and accordingly Overholser amended his complaint to set forth as a second cause of action a common count for money had and received.

The trial court thereupon determined that each of the defendants was liable for his original one-sixth share of the debt; that each of defendants Keltner and Glynn was liable under the indemnity agreement to pay one-fourth of Maizlish' liability; and that Glynn was liable to Overholser for an additional $1,000 on the unpaid promissory note he gave the

bank in payment for one of the automobiles. Accordingly, the court rendered judgment against appellant for $5,388.25 including prejudgment interest.

Appellant contends that the court erred in allowing Overholser to amend his complaint to state a common count which, in any event, fell when the court found that the plaintiff was not entitled to recover on the original cause of action. He further contends that the plaintiff was not entitled to rely upon the answers to supply the essential fact that plaintiff was a coguarantor of the Bonus obligation, which was missing from the complaint, to entitle him to amend with a common count. Appellant also contends that the court erred in awarding judgment on Glynn's $1,000 promissory note as a matter outside the pleadings and the evidence; that the court failed to enter findings on material issues, made findings unsupported by the evidence, and entered conclusions of law inconsistent with the findings; and that prejudgment interest was improperly allowed. These contentions are without merit.

 Appellant first contends that the court erroneously allowed Overholser to amend his complaint after the statute of limitations on implied contracts had expired to set forth a second cause of action on a common count. The amendment was allowed on the basis that the common count, which relied upon the facts alleged in the original complaint supplemented by the answers of the defendants, varied only the theory of the action. The complaint as amended was therefore deemed to relate back to the filing date of the original complaint since the second count arose out of the same transaction set forth or attempted to be set forth in the original pleading. It is the basic set of facts and not the legal theory pleaded that is determinative of the plaintiff's right to amend his pleadings after the statute of limitations has run. (*Austin* v. *Massachusetts Bonding & Ins. Co.,* 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681].) ''In its modern formulation [citation] the rule is that 'the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the *same general set of facts.*' '' (*Wilson* v. *Bittick,* 63 Cal.2d 30, 37-38 [45 Cal.Rptr. 31, 403 P.2d 159].) (Italics added.)

''The rule which makes relation back of an amendment dependent upon whether recovery is sought on the same general set of facts as those alleged in the original complaint is in accordance with the basic principle of code pleading that a litigant need only allege the facts warranting recovery. [Cita-

tions.]'' (*Austin* v. *Massachusetts Bonding & Ins. Co., supra,* 56 Cal.2d 596, 601.) ''The modern rule, where amendment is sought after the statute of limitations has run, is that the amended complaint will be deemed filed as of the date of the original complaint so long as recovery is sought in each complaint upon the same general set of facts.'' (*Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 718 [128 P.2d 522, 141 A.L.R. 1358]; *Weinstock* v. *Eissler,* 224 Cal.App.2d 212, 234 [36 Cal.Rptr. 537].) A change in the form or type of contractual obligation alleged may be only a change in legal theory, not affecting the cause of action for breach of the obligation. (*Pruitt* v. *Fontana,* 143 Cal.App.2d 675, 682 [300 P.2d 371]; *Ben-Hur Mfg. Co.* v. *Empire Factors,* 181 Cal.App.2d 123, 131 [5 Cal.Rptr. 181].) So a complaint on express contract may be amended to change to, or add an additional count for *quantum meruit.* (*McCully* v. *Gano,* 116 Cal. App. 695 [3 P.2d 348]. See also *Vallera* v. *Vallera,* 64 Cal.App. 2d 266 [148 P.2d 694]; *Wennerholm* v. *Stanford University School of Medicine, supra,* 20 Cal.2d 713, 715, 718; *Sanders* v. *Magill,* 9 Cal.2d 145, 151 [70 P.2d 159].) █ The appearing defendants all of whom were attorneys, were not prejudiced because they could not possibly have been under any misapprehension as to the nature of Overholser's claim against them. (*Wilson* v. *Bittick, supra,* 63 Cal.2d 30, 38-39.)

█ Appellant further contends that because the trial court concluded that Overholser was not entitled to recover as the bank's assignee, he is not entitled to recover on the common count based upon the same facts. Glynn's demurrer to Overholser's first cause of action was overruled by the court, and he thereafter established a valid defense to that action on the basis that his coguarantor was not entitled to sue as the assignee of the bank's claims. During the pretrial period it was brought out that the plaintiff instead should have sued to obtain contribution on the implied obligation of his coguarantors by way of a common count and Overholser amended his complaint to obviate this defect. Moreover, under circumstances such as these the common count with which the complaint is amended does not then fall due to the defect in the express contract pleaded in the first cause of action. █ ''A plaintiff may rely on a different theory of recovery in the common count as long as that theory is fully supported in the specific facts pleaded in the other counts.'' (*Crocker-Anglo Nat. Bank* v. *Kuchman,* 224 Cal.App.2d 490, 497 [36 Cal.Rptr. 806]. See also *Leoni* v. *Delany,* 83 Cal.App.2d 303 [188 P.2d

765, 189 P.2d 517]; *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 [256 P.2d 947].) In those decisions which have held that the common count falls with the defective specific count it is clearly demonstrated that the plaintiff was relying on the same defective fact situation to establish the common count. "In each case it was held that the count relied upon to establish the contract was fatally defective in that it failed to state sufficient facts to show a contractual relation, and that the common count based upon the same facts must also fall. That is not the question involved here. Where a contract is merely unenforceable because within the purview of the statute of frauds, an action generally will lie upon a common count." (*Leoni v. Delany, supra,* 83 Cal.App.2d 303, 307.) The facts originally pleaded by Overholser were supplemented by the allegations shown in the answers, and the complaint was thereafter amended to state a common count in reliance upon a different and impregnable theory.

▇ "It is settled that where one of several joint judgment debtors pays more than his proportionate share of the judgment, he is entitled to obtain a proportionate contribution from those jointly liable with him [citations] and may bring suit against one or more of his codefendants on the implied contract of each obligor to the others that they will share the burden equally. [Citations.]" (*Woolley v. Seijo,* 224 Cal.App.2d 615, 621-622 [36 Cal.Rptr. 762].) The same principle applies to coguarantors who are jointly and severally liable to pay the principal obligation.

Glynn's answer alleged that Overholser signed a guaranty and was similarly liable in the same respects as was Glynn. There was sufficient reference, thereby, to the general set of facts to permit the plaintiff's amendment to set forth a second cause of action on an implied contract after the running of the statute of limitations. (*Austin v. Massachusetts Bonding & Ins. Co., supra,* 56 Cal.2d 596.)

▇ The right of a guarantor to contribution against coguarantors is an obligation implied by law and is governed by equitable principles. ▇ The shareholders sold the automobiles which had been purchased by Bonus and the proceeds were applied to satisfy their obligation to pay the bank the amount originally borrowed for the purchase of these same automobiles. Glynn bought one of the cars and in a letter to the bank dated September 7, 1962, acknowledged his personal obligation to pay the $1,000 due to the bank on his ᵖromissory note. This was part of the consideration received

by the guarantors and returned to the bank for credit against the Bonus obligation. It was not necessary for Overholser to set forth a separate cause of action in his complaint to recover on that obligation. That note was held by the bank as substituted collateral security in place of the automobile which it represented. It was properly transferred to Overholser along with the other notes and guarantees upon which Overholser sued altogether as a single transaction.

In determining the proportionate share of the liability due from each defendant the trial court properly deducted this $1,000 from the total liability, divided the net indebtedness by the number of guarantor-shareholders (six) and thus determined Glynn's proportionate liability. The court then added to this sum one-fourth of Maizlish' liability pursuant to the indemnity agreement and also added the $1,000 representing Glynn's personal debt.

Appellant further contends that the findings are inaccurate in certain respects, are not supported by the evidence, and do not in turn support the conclusions of law and the judgment. We have reviewed the pretrial conference order, the evidence adduced at the trial, and the findings of fact and conclusions of law. We find therein no substantial discrepancies. "In order to justify the reversal of a judgment because of defective findings it must affirmatively appear not only that substantial injury has been caused and that substantial rights have been affected but also that a different result would have been probable if the defect had not occurred." (*Culjak* v. *Better Built Homes, Inc.*, 58 Cal. App.2d 720, 725 [137 P.2d 492]; see also *Pacific Finance Corp.* v. *Crane*, 131 Cal.App.2d 399 [280 P.2d 502]; *Jaffa* v. *Guttman*, 175 Cal.App.2d 790 [346 P.2d 876].) Obviously, there is no basis for reversal on these grounds. It was the duty of the trial court to determine each of the issues in accordance with the pretrial conference order, which controls the conduct of the litigation and, where inconsistent, supersedes the pleadings. It was not necessary for Overholser to amend his complaint to allege Glynn's $1,000 promissory note separately since the pretrial conference order defined the legal and factual framework within which the law suit was properly decided. (Rule 216, Rules of the Superior Court; *Perry* v. *Thrifty Drug Co.*, 186 Cal.App.2d 410 [9 Cal.Rptr. 50].)

The Statement of Agreed or Admitted Matters in the joint pretrial statement refers both to the Glynn promissory note and to the Maizlish indemnity agreement which was signed by

Glynn and three of the other guarantors. No objection was raised in regard to these matters with respect to the pretrial statement or the introduction of the documents into evidence during the trial and Glynn is foreclosed from asserting this issue the first time on appeal. ''Under a long established rule of practice a point not presented by the pleadings may nevertheless be raised at the trial. If no objection is made and the case is tried on the theory that the matter is in issue, it will be so regarded on appeal. . . . This same rule applies to pretrial; i.e., the theory of the trial may operate to enlarge the issues fixed by the pretrial order. [Citations.]'' (Witkin, Cal. Procedure (1967 Supp.) pp. 674, 675.) ▇ The determination of points raised at the trial without objection cannot be challenged on appeal even though the points expand issues settled by a pretrial conference order or a joint pretrial statement. (*Collison* v. *Thomas*, 55 Cal.2d 490, 497-498 [11 Cal. Rptr. 555, 360 P.2d 51].)

▇ Appellant further urges that in determining his proportionate share of the total liability the sum of $4,750 paid by Freemond should first have been deducted and the net balance divided by five. The court instead divided the $17,150.73 total liability by six to determine Glynn's share, added to that his one-quarter of Maizlish's one-sixth and added thereto the $1,000 promissory note principal. This was proper since where a surety has released a co-surety, the other co-sureties remain under the same duty of contribution as they had originally. The release is a matter solely between the parties thereto. ''The obligation of the other cosureties is neither increased nor diminished by the fact that the surety entitled to contribution has agreed to forego or postpone payment by one of them. . . .'' (See Comment to Restatement of the Law of Security, (1941) § 159, p. 444.)

▇ Appellant contends that prejudgment interest was improperly allowed and that, in any event, the plaintiff was not entitled to prejudgment interest prior to the time on or about July 10, 1963, when Overholser paid the bank the final $162.73. The court allowed prejudgment interest from June 12, 1963, the date when the bank sold Overholser's securities. It is held to be the general rule that prejudgment interest is not allowable in actions to recover the reasonable value of services rendered or goods sold because the exact amount to which the plaintiff is entitled is uncertain until it has been determined by the court upon the presentation of evidence of value, and the person liable does not until then know of the

sum he owes and can be in no default for not paying. (*Samuels* v. *Singer*, 1 Cal.App.2d 545, 555 [36 P.2d 1098, 37 P.2d 1050].) However, a person who is entitled to recover a liquidated sum, that is an amount certain or capable of being made certain by calculation, is entitled to recover interest from the day upon which the right to recovery vests in him. (Civ. Code, § 3287; *Courteney* v. *Standard Box Co.*, 16 Cal.App. 600 [117 P. 778]; *McColgan* v. *Scoble*, 115 Cal. App. 165 [1 P.2d 36].) Moreover, "Where there is no express contract covering the matter, the law awards interest on money from the time it becomes due and payable if such time is certain or can be made certain by calculation. [Citations.]" (*Budget Finance Plan* v. *Sav-On Food Club*, 44 Cal. 2d 565, 572, fn. 6 [283 P.2d 694].) The right to the recovery of money vested in Overholser on the date when his property was sold and the proceeds applied toward the indebtedness of all six guarantors. The fact that interest perhaps should not have been charged on the $162.73 until one month later is *de minimis* and no sufficient ground for modifying the judgment. (Civ. Code, § 3533; *Brady* v. *Ranch Mining Co.*, 7 Cal.App. 182 [94 P. 85].)

Without determining whether the trial court properly decided that Overholser was not entitled to recover as assignee of the bank, we find that the judgment based upon respondent's liability under an implied contract as a coguarantor is correct. No prejudice having accrued to either party, there was neither reversible error nor miscarriage of justice. (Cal. Const. art. VI, § 13)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 27, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 29, 1969.