**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EVANSTON INSURANCE COMPANY,
*Plaintiff-counter-defendant-*
*Appellee,*

v.

OEA, INC.,
*Defendant-counter-claimant-*
*Appellant,*

and

ROYAL INSURANCE COMPANY OF
AMERICA,
*Counter-cross-claimant-*
*defendant-Appellee.*

No. 07-15316

D.C. Nos.
CV-02-01505-
DFL/EFB
CV-02-01981-
DFL/PAN

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Argued and Submitted
January 15, 2009—San Francisco, California

Filed May 21, 2009

Before: Procter Hug, Jr., Stephen Reinhardt and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Hug

**COUNSEL**

Jeffrey Isaac Ehrlich, The Ehrlich Law Firm, Claremont, California, for the appellant.

David Tartaglio, Musick Peeler and Garrett, LLP, Los Angeles, California, for appellee Evanston Insurance Company.

Dirk M. Schenkkan and Sean M. SeLegue, Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, Califor-

nia, for appellee Arrowood Indemnity Company, successor-in-interest to Royal Insurance Company of America.

## OPINION

HUG, Circuit Judge:

OEA, Inc. ("OEA") appeals the final judgment incorporating the district court's orders of September 22, 2003 and March 30, 2004 granting summary judgment for Evanston Insurance Company ("Evanston") and Royal Insurance Company of America ("Royal") and awarding prejudgment interest to Evanston.[1] The insurance policies at issue are general commercial liability policies, with the Royal policy providing excess coverage above the Evanston policy. In granting summary judgment, the district court determined that Evanston and Royal were not obligated to defend and indemnify OEA in two actions brought by employees of OEA's subsidiary OEA Aerospace, Inc. ("Aerospace"), and that Evanston was entitled to reimbursement of and prejudgment interest on funds it had paid toward OEA's defense and settlement pursuant to a reservation of rights. On appeal, OEA contends that the district court erroneously decided a disputed issue of fact in granting summary judgment for Evanston and Royal and that the district court erred in awarding prejudgment interest for Evanston where OEA's liability was not established until the grant of summary judgment. Because the reimbursement to Evanston and the award of prejudgment interest were both proper, we affirm.[2]

---

[1]OEA also sought appellate review of the district court's order of July 26, 2005 granting summary judgment for Nutmeg Insurance Company and Twin City Fire Insurance Company. OEA, Nutmeg, and Twin City have since entered into a settlement agreement. The appeal was voluntarily dismissed as to Nutmeg and Twin City in accordance with Federal Rule of Appellate Procedure 42(b).

[2]In light of our disposition of this appeal, Evanston's motion to strike portions of OEA's reply brief is denied as moot.

## I.

## Background

OEA is a Delaware corporation with its principal place of business in Denver, Colorado. Until 1994, it manufactured booster caps and other items for use in the aerospace industry; many of its products had explosive components, including the booster caps. Aerospace is located in Fairfield, California and is the wholly owned subsidiary of OEA. OEA alleges that it transferred its aerospace business to Aerospace in 1994 and, from that point on, limited its business to manufacturing automotive safety devices.

In two incidents in late 1995 and early 1996, Aerospace employees Patricia Shugart ("Shugart") and Karen Wise ("Wise") were injured while repairing booster caps originally sold and manufactured by OEA. Both employees eventually retained the same attorney—Paul Kranz ("Kranz"). Shugart filed suit on December 18, 1996, and Wise did so on February 6, 1997. The complaints are virtually identical: both name "OEA, OEA Aerospace, and Does 1 through 200" as defendants and allege liability under theories of general negligence, products liability, premises liability, and strict liability.

OEA purchased a general liability policy from Evanston in 1998, with policy limits of $1 million per claim and $2 million in the aggregate. The Evanston policy period ran from May 1, 1998 to May 1, 1999 and provided coverage for "CLAIMS FIRST MADE . . . DURING THE POLICY PERIOD." The policy defines a "claim" as "a notice received by the insured of an intention to hold the insured responsible for an Occurrence involving the policy and shall include the service of suit or institution of arbitration proceedings against the insured." The Royal policy provided $5 million in excess coverage above the Evanston policy during a policy period coterminous with the Evanston policy period. OEA contends that,

prior to the policy period, it was unaware of Shugart's and Wise's intent to hold OEA liable.

Aerospace was served with Shugart's complaint on June 10, 1997, but OEA was not served until over a year later on October 23, 1998. On November 3, 1997, James Welsh ("Welsh"), OEA's Director of Personnel and Security, was served with Wise's complaint as "Agent for Service of Process of OEA Aerospace, Inc." Welsh, however, was not the agent for service of process for Aerospace. It does not appear that Wise made any further attempts to serve OEA or Aerospace.

When Aerospace received the Shugart complaint in June 1997, it forwarded a copy to Welsh at OEA, but Welsh concluded that Shugart's claim would be handled exclusively as a worker's compensation claim. He notified Aerospace's worker's compensation carrier of the claim through its agent, Patricia Hollenbeck. When Welsh received the Wise complaint, he followed the same procedure.

OEA and Aerospace filed answers to the Shugart and Wise complaints on January 8, 1999 and March 30, 1999, respectively. Aerospace was ultimately dismissed from the actions because the claims were barred under the worker's compensation laws.

Following a jury trial, a $13,680,565 judgment (including $10 million in punitive damages) was entered against OEA in the Shugart suit. The California Court of Appeal, however, overturned the jury award on June 27, 2005 and remanded for a new trial. *Shugart v. OEA, Inc.*, No. A099649, 2005 WL 1503812, at \*1 (Cal. Ct. App. June 28, 2005, *as modified* July 22, 2005). OEA later settled both suits. Under a full reservation of rights, Evanston paid $345,783.22 toward OEA's defense in the Shugart case and paid $1,199,141,10 to defend and settle the Wise suit.

Evanston filed suit in state court on November 17, 2001, alleging that OEA was liable for breach of contract, intentional misrepresentation, and rescission of insurance contract. After removing these suits to federal court on grounds of diversity of citizenship, OEA brought counterclaims against Evanston, Royal, and other insurers not party to this appeal, alleging breach of contract and breach of the covenant of good faith and fair dealing. Royal counterclaimed and thereafter filed a first amended counterclaim against OEA on October 11, 2002.

OEA, Evanston, and Royal filed motions for partial summary judgment on the issue of whether the Evanston and Royal policies provided coverage for the Wise and Shugart claims. In its September 19, 2003 order, the district court concluded that the claims were not covered because they were first made in 1997, prior to the Evanston and Royal insurance policy period. The court therefore granted partial summary judgment for Evanston and Royal.

Evanston then moved for summary judgment, seeking reimbursement of amounts paid for OEA's defense and prejudgment interest from the date of payment. The district court granted the motion by its order of March 29, 2004. After the district court denied OEA's motion for reconsideration, Evanston requested the entry of judgment. The judgment and amended judgment were entered for Evanston on February 7, 2007 and February 9, 2007, respectively, and OEA timely appealed. We have jurisdiction under 28 U.S.C. §§ 1332, 1291.

## II.

### Liability for Costs of Defense and Settlement

OEA challenges the district court's grant of summary judgment on the amounts paid for defense and settlement, arguing that the district court erred by resolving a factual dispute

when it determined that the Shugart and Wise claims were first made prior to the Evanston and Royal policy period. We review a district court's grant of summary judgment de novo. *Arakaki v. Hawaii*, 314 F.3d 1091, 1094 (9th Cir. 2002). In reviewing the grant of summary judgment for Evanston and Royal, "[w]e must determine, viewing the evidence in the light most favorable to [OEA], whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). We do not weigh the evidence or determine the truth of the matter; instead, we only determine whether there is a genuine issue for trial. *See Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc).

It is undisputed that OEA became aware of the Shugart complaint in June 1997 and the Wise complaint in November 1997, before the Evanston and Royal policy periods commenced on May 1, 1998. Relying on this fact and the content of the complaints, the district court held that the claims were first made in 1997. But, OEA contends that it did not become aware of Shugart's and Wise's intention to hold OEA liable for their injuries until October 1998, by which time the policies were in effect. OEA argues that in granting summary judgment on this issue, the district court wrongly decided a disputed fact—whether it was reasonable for OEA to read the complaints as not evincing an intent to hold OEA liable for the injuries at issue. We disagree. The complaints make clear Shugart's and Wise's intention to hold OEA liable, and the district court properly held that there was no genuine issue of material fact as to the date the claims were first made.

Only claims "FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD" are covered by the Evanston and Royal policies. A claim is defined in the Evanston policy as "a notice received by the insured of an intention to hold the Insured responsible for an Occurrence involving this policy and shall include the service of suit or institution of

arbitration proceedings against the Insured." The district court interpreted this language as follows:

> The policy defines "claim" as a "notice." Without saying so explicitly, Evanston and OEA appear to agree that the language incorporates a reasonable person standard. A foolish or overly sophisticated failure or refusal to realize that one is the intended object of suit would be of no assistance to an insured. Similarly, a confusingly vague or indefinite notification would not amount to a claim if a reasonable insured would not deem it such.

OEA agrees with this interpretation, but argues that whether a reasonable insured would understand the complaint as evincing an intention to hold OEA liable is a question for the jury.

[1] Given the undisputed content of the complaints and OEA's receipt of both complaints, there is no genuine dispute as to when OEA received notice of Shugart's and Wise's intention to hold OEA responsible for their injuries. Both complaints clearly list "OEA, OEA Aerospace, and Does 1 to 200" as defendants. OEA and OEA Aerospace are described as separate business organizations in the complaints. The causes of action are listed as (1) general negligence, (2) products liability, (3) premises liability, and (4) strict liability. In alleging a cause of action for products liability, Shugart and Wise alleged that OEA alone sold the gunpowder, storage bins and trays, protective gear, and other products that contributed to their injuries. Elsewhere in the complaints, facts are alleged against both OEA and OEA Aerospace.

OEA argues that other evidence nonetheless creates a genuine issue of material fact as to the reasonableness of OEA's understanding that Shugart and Wise did not intend to hold OEA liable. The evidence does indicate that, as a general matter, OEA and Aerospace were frequently confused as corpo-

rate entities and that, at times, Aerospace was referred to as OEA. It is also undisputed that Shugart and Wise did not seek to serve OEA independently from Aerospace in 1997. And, finally, OEA has proffered direct and circumstantial evidence of various individuals' subjective beliefs that the complaints did not state a cause of action against OEA.

**[2]** Despite OEA's subjective belief, the complaints at issue clearly name OEA as a defendant separate from Aerospace. Taking the evidence in the light most favorable to OEA, the complaints constituted a notice received by OEA of an intention to hold OEA responsible for injuries. Any subjective belief that the complaints solely allege worker's compensation claims against Aerospace was unreasonable where the complaints specifically allege that OEA is liable for injuries caused by products it manufactured and sold. The factual disputes cited by OEA are immaterial against the undisputed content of the complaints.

**[3]** OEA's contention that summary judgment was improper because reasonableness is generally a factual inquiry left to the jury, is also unavailing. Although "the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment," we have "squarely rejected the contention that reasonableness is *always* a question of fact which precludes summary judgment." *In re Software Toolworks Inc.*, 50 F.3d 615, 622 (9th Cir. 1994) (internal quotation marks and citation omitted). "Rather, reasonableness becomes a question of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion." *Id.* at 621-622 (internal quotation marks and citations omitted). In this case, the facts leave no room for a reasonable difference of opinion, and summary judgment was appropriate.

**[4]** Because the claims were made prior to the policy period, they were not even potentially covered. OEA did not pay premiums to cover these claims, and when Evanston

made payments for OEA's defense and settlement, OEA received more than its bargained-for coverage. Therefore, Evanston is entitled to the reimbursement of $1,544,924.32 in defense and settlement costs.

## III.

## Prejudgment Interest

**[5]** OEA also challenges the award of prejudgment interest to Evanston because the amounts paid for defense and settlement did not vest as required by California Civil Code § 3287(a). Under California Civil Code § 3287(a), "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." The parties agree that the amount of Evanston's damages was "certain" once Evanston made payment toward OEA's defense and settlement, but OEA contends that Evanston's right to reimbursement did not "vest" prior to the district court's grant of summary judgment, making Evanston ineligible for prejudgment interest. The other contention made by OEA is that prejudgment interest should not be applicable in the insurer-insured context.

In its March 30, 2004 order, the district court found that the right to reimbursement vested when Evanston made payment to OEA and awarded prejudgment interest from the time the payments were made. The district court's interpretation of state law is reviewed de novo. *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc). We are bound to follow the decisions of the state's highest court, but, where "the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Id.* (quoting *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991)).

**[6]** California cases uniformly have interpreted the "vesting" requirement as being satisfied at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined. *See e.g.*, *Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*, 211 Cal. App. 3d 1285, 1291, 1307 (1989) (awarding prejudgment interest from the date plaintiff paid to settle a claim in full even though the defendants' legal liability obligating them to contribute to the settlement was not established until the entry of summary judgment); *Overholser v. Glynn*, 267 Cal. App. 2d 800, 809-10 (1968) (holding that the plaintiff-guarantor's right to recover the money "vested" when he paid to satisfy his coguarantors' indebtedness). The case of *Levy-Zentner Co. v. Southern Pacific Transportation Co.*, 74 Cal. App. 3d 762 (1977), made an extensive historical review of § 3287 since its enactment in 1872. The court stated that § 3287(a) applies by its terms without restriction to "*Every person who is entitled to recover damages*" as long as the damages are "*certain or capable of being made certain by calculation.*" *Id.* at 796 (italics in original).

**[7]** Our opinion in *Highlands Insurance Co. v. Continental Casualty Co.* stated, "While a factual dispute respecting damages will preclude a grant of prejudgment interest under § 3287(a) a legal dispute will not." 64 F.3d 514, 521 (9th Cir. 1995) (citing *Hartford*, 211 Cal. App. 3d at 1307). The opinion also relies on the *Levy-Zentner* case in determining that prejudgment interest runs from the day damages are of a nature to be certain or capable of being made certain.

**[8]** It is clear that the "vesting" provision as interpreted by the California courts and our opinion in *Highlands* relying on California law, requires that the *amount* must be vested, not that the legal entitlement to that amount be vested. OEA's interpretation of § 3287(a) would rule out any prejudgment interest where legal liability can only be determined after judgment. The statute and case law, however, make clear that the California legislature intended to allow for prejudgment

interest where the amount of damages is certain instead of restricting plaintiffs to postjudgment interest.

**[9]** The *Levy-Zentner* case and our court's reliance on it in *Highlands* also answers the other question of whether the section is applicable to the insurer-insured situation. *Levy-Zentner* clearly says prejudgment interest is available to every person who is entitled to recover damages that are certain. OEA's arguments concerning prejudgment interest rely on several district court cases[3] that are not precedent in this circuit. The precedent in this circuit is set forth in our *Highlands* case interpreting California law.

## Conclusion

**[10]** The underlying Shugart and Wise claims were first made prior to the Evanston and Royal policy periods; accordingly, OEA's defense and settlement costs are not covered by either policy. Evanston is entitled to reimbursement for the funds expended for the defense and settlement of the lawsuits and for prejudgment interest from the time the funds were expended.

**AFFIRMED.**

---

[3]*Int'l Ins. Co. v. Red & White Co.*, No. C-93-0659, 1995 WL 150517 (N.D. Cal. 1995); *Am. States Ins. Co. v. Crawley Constr., Inc.*, 779 F. Supp. 137 (N.D. Cal. 1991), *aff'd mem.,* 5 F.3d 534 (9th Cir. 1993); *Omaha Indem. Ins. Co. v. Cardon Oil Co.*, 687 F. Supp. 502 (N.D. Cal. 1988), *aff'd mem.*, 902 F.2d 40 (9th Cir. 1990).