Filed 1/9/25  CDC San Francisco v. Critchfield Mechanical CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CDC SAN FRANCISCO, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CRITCHFIELD MECHANICAL INC.,<br><br>    Defendant and Respondent. | A168357<br><br>(San Francisco County Super. Ct. No. CGC-18-563971) |

After prevailing at trial against defendant Critchfield Mechanical Inc. (Critchfield), plaintiff CDC San Francisco, LLC (CDC) sought over $9 million in prejudgment interest.  The trial court denied the motion, based in part on its finding that "the amount of damages was in serious dispute," and thus damages were not certain or capable of being made certain by calculation. We affirm.

**BACKGROUND**

CDC owns the InterContinental San Francisco Hotel, a 33-story, high-rise hotel located in San Francisco, California.  Critchfield is a heating ventilation and air conditioning (HVAC) contractor that installed the hotel's HVAC system.

The hotel's HVAC system "consists of several different systems," including a four-pipe fan coil system for heating and cooling guestrooms.  The

1

guestrooms are equipped with a visible "fan coil unit" that controls the temperature using water from chillers and boilers at the roof level. The water is transported through a vertically oriented system of piping called "risers" that connect the fan coil units in the guestrooms with the chillers and boilers on the roof.

At some point after installation, CDC discovered a water leak in the hot water supply risers on the 21st floor of the hotel, which CDC later found impacted the 21st and 22nd floors of the hotel, causing several guestrooms to be removed from service. CDC operations personnel subsequently learned the water leak was "considerable and extensive, spanning multiple floors and damaging other aspects" of the hotel's infrastructure. Thus, on January 30, 2018, CDC sued Critchfield for breach of contract and negligence, alleging Critchfield failed to properly design and construct the hotel's HVAC system. The defective HVAC system allegedly caused damage to the hotel's framing, shear walls, drywall, paint, flooring, and piping, although CDC's "investigation of the latent defects" was ongoing.

In January 2023, the action proceeded to a jury trial, which "lasted for over six weeks, spanned 26 witnesses, including about 19 expert witnesses." CDC's expert, James Howard, proposed a "full horizontal replacement" of the risers, costing $24,570,800, plus "other costs" of $2,830,315, for a total of $27,401,115.

On the other hand, Critchfield's experts testified to different remediation plans, including a "full vertical replacement" estimated by William Ivey to cost $15,655,991, and another by Jeff Harris to cost $15,532,232.89. Alternatively, Critchfield expert John Littrell proposed a "band-aid repair" for $5,019,547, which would fix only "the two hot water

2

risers, but not the two chilled water risers or the fan coil units in each room." The estimates of CDC's future lost profits ranged from $0 to $2,257,086.

The jury returned a verdict for CDC, awarding past economic damages of $457,000 and future economic damages of $17,913,077 for a total award of $18,370,077.[1] The court reduced the award to $17,370,077 based on CDC's settlements with other parties and entered judgment on April 17, 2023.

CDC then moved for prejudgment interest pursuant to Civil Code section 3287 (section 3287),[2] seeking "interest at the rate of 10% per annum from January 30, 2018 through April 17, 2023, on actual damages awarded in the amount of $17,370,077.00, for a total of $9,056,243.79." CDC argued that damages were "certain," within the meaning of section 3287, subdivision (a) (section 3287(a)), because Critchfield "has long been in the business of estimating construction costs" and thus "could calculate" the dollar value of labor and materials needed to replace the HVAC system.

CDC also pointed to its November 8, 2018 demand for $16 million, which represented "the dollar value of the labor and materials needed to replace the system"; an April 30, 2020 document production to Critchfield containing "bids, plans, prior repair invoices, estimates, testing information, leak charts, occupancy reports, and CDC's P&Ls"; a June 16, 2020 "full-day

---

[1] CDC asserts that the jury must have "accepted" Critchfield's estimates because $15,655,991 (Critchfield's estimated cost of repair) plus $2,257,086 (future lost profits) equals $17,913,077, which is what the jury awarded in future damages.

[2] Below, CDC sought interest pursuant to section 3287, subdivision (a), which provides for mandatory prejudgment interest on liquidated claims, *and* subdivision (b), which provides for discretionary prejudgment interest on unliquidated contract claims. (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 828–829.) On appeal, CDC argues entitlement to prejudgment interest pursuant to subdivision (a) only, so we do not address discretionary interest in this opinion.

3

presentation" which included "a detailed estimate summary of costs to replace the defective HVAC system"; and the trial testimony by Critchfield's experts, who "calculated the cost to replace the defective HVAC system at $15,532,232.89 and $15,655,991, respectively," plus an additional amount for lost profits.

In opposition, Critchfield argued the parties disputed "the nature, extent and computation of [CDC's] alleged damages" throughout the litigation. Thus, according to Critchfield, "the amount of damages was not only in serious dispute but . . . the dispute could not be resolved except by verdict or judgment," making damages uncertain and not amenable to an award of prejudgment interest pursuant to section 3287(a).

On reply, CDC asserted that Critchfield's dispute concerned "the scope" of repairs, which "does not mean that the dollar amount of the repair is incapable of calculation." "What is relevant," CDC argued, "is that the varying options [for repair or replacement of the HVAC systems] were calculated or could be calculated."

The court ultimately denied CDC's motion for prejudgment interest, explaining that "the amount of damages was in serious dispute" and the jury's award "was roughly $16 million less than the amount [CDC] sought to prove at the commencement of trial."

CDC timely appealed.

## DISCUSSION

Section 3287(a) provides, in relevant part, "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day. . . ." To recover prejudgment interest under section 3287(a), there are two relevant

4

requirements: certainty and vesting. (See *Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 906 (*Chesapeake*); *Leff v. Gunter* (1983) 33 Cal.3d 508, 520 [noting "the additional requirement for prejudgment interest under section 3287 that plaintiff's entitlement to damages vest 'upon a particular day' "].) If the requirements are satisfied, then "the trial court has no discretion—it must award prejudgment interest from the first day there exists both a breach and a liquidated claim." (*Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 293 (*Watson*).)

"California cases uniformly have interpreted the 'vesting' requirement as being satisfied at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined." (*Evanston Ins. Co. v. OEA, Inc.* (9th Cir. 2009) 566 F.3d 915, 921, citing *Hartford Accident & Indem. Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1291, 1307, and *Overholser v. Glynn* (1968) 267 Cal.App.2d 800, 809–810; see also *Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 798–799.)

"Damages are certain or capable of being made certain by calculation, or ascertainable, for purposes of the statute if the defendant actually knows the amount of damages or could calculate that amount from information reasonably available to the defendant." (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 150–151.) Thus, the "focus [is] on the *defendant's* knowledge about the amount of the plaintiff's claim." (*Chesapeake, supra,* 149 Cal.App.3d at p. 907; see also *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 774 (*Children's Hospital*).)

"Under this test for certainty as to amount, a dispute or denial of *liability* does not make the *amount of damages* uncertain." (*Watson, supra,*

5

2 Cal.App.5th at p. 294.) "In contrast, damages that must be determined by the trier of fact based on conflicting evidence are not ascertainable." (*Collins v. City of Los Angeles, supra*, 205 Cal.App.4th at p. 151.)

"Where the facts are not in dispute or, alternatively, have been established by findings of the trial court supported by substantial evidence, appellate courts independently review whether and when the plaintiff's damages were made certain or capable of being made certain by calculation." (*Watson, supra*, 2 Cal.App.5th at p. 296; see also *KGM Harvesting Co. v. Fresh Network* (1995) 36 Cal.App.4th 376, 390–391, fn. 8 [rejecting abuse of discretion standard].)

Here, we have no difficulty affirming the trial court's denial of prejudgment interest. CDC seeks prejudgment from January 30, 2018, the date CDC filed its complaint, through entry of judgment on April 17, 2023. However, CDC offers no evidence that damages were certain or capable of being made certain as of January 30, 2018.

First, CDC suggests that Critchfield could calculate the damages because it "is not only in the business of preparing such estimates, but built the HVAC system in this [hotel]." However, the complaint does not provide sufficient information to calculate damages with the requisite certainty. For example, CDC affirmatively asserted that its "investigation of the latent defects is ongoing" and the defects alleged in its complaint "may not be exhaustive." The complaint also included general allegations of damage to "other aspects" of the hotel's infrastructure without identifying what those other aspects were.

An April 3, 2018 letter to Critchfield highlights the lack of sufficient information at the time CDC filed its complaint. In the letter, CDC explains that leaks "are being discovered several times per month by Hotel guests

6

and/or the Hotel's maintenance staff," and that "there is a leak in at least one guest room that needs to be repaired." Thus, as of April 2018, it appears even CDC lacked the fundamental information required to calculate damages with certainty.

CDC's argument that it made a demand of $16,000,000 in November 2018, nearly a year after filing the complaint, fails for the same reason. A plaintiff must do more than merely claim damages to recover prejudgment interest; " 'the plaintiff must supply [the defendant] with a statement and supporting data so that defendant can ascertain the damages.' " (*KGM Harvesting Co. v. Fresh Network*, *supra*, 36 Cal.App.4th at p. 391, quoting *Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 435.) While CDC notes that it "provided numerous documents to Critchfield's [insurance] carriers," this occurred in April 2020, years after CDC filed its complaint.

Similarly, CDC's reliance on Critchfield's own calculations as evidence of certainty is unavailing since—as CDC asserted below—Critchfield's experts were "not hired . . . until just a few months before trial." Indeed, one cost of repair estimate is dated January 18, 2023, while another is dated January 11, 2021. Thus, neither would support an award of prejudgment interest from January 30, 2018.

CDC also argues that the trial court erred in relying on the parties' "serious dispute" over damages as evidence of uncertainty. While it is true that "a dispute as to the *amount* of alleged damages" does not necessarily preclude certainty (*Leff v. Gunter*, *supra*, 33 Cal.3d at p. 520), here, the various damage calculations were based upon disputed facts, not "alternative theories of liability." (*Children's Hospital*, *supra*, 97 Cal.App.4th at pp. 772–773.) CDC asserted a single theory of liability that "the HVAC system [was] not properly designed and constructed by Critchfield," and the parties

7

disputed the scope and costs of repair; each party offered different remediation proposals ranging between $5 million and $24 million, and the lost profits depended on the scope of repair. While CDC argues that the "varying damage calculations . . . were based on different legal issues," it does not identify what the "legal issues" were. Rather, as CDC's argument implicitly acknowledges, the dispute was a factual one regarding whether only "two hot water risers" needed to be repaired or whether a "full horizontal replacement" was necessary. Thus, while alternative damage models may not preclude an award of prejudgment interest where the models are "tethered to legal theories," here, the different models were based on factual, not legal, disputes. (*Children's Hospital*, *supra*, 97 Cal.App.4th at p. 773.)

Additionally, CDC argues that the trial court erred in considering the amount CDC requested in its opening statement ($34.5 million) as compared to the jury's award. Again, while "a slight difference between the amount of damages claimed and the amount awarded does not preclude an award of prejudgment interest," the discrepancy must be minor, for example, "the erroneous omission of a few matters from the account or erroneous calculation of the costs . . . ." (*Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 408–409.) Here, the difference is not slight; rather, as the trial court noted, the jury awarded "roughly $16 million less than the amount [CDC] sought to prove at the commencement of trial."

Ultimately, CDC bore the burden of proving that damages were certain or capable of being made certain and the right to recover vested on a particular day. (§ 3287(a); cf. *Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1322 ["A party seeking an award of prejudgment interest, at least under section 3291, bears the burden of proving entitlement thereto"].) Here, even assuming arguendo that damages were certain at

8

some point in time, CDC fails to establish that damages were certain as of the date it filed its complaint, i.e., January 2018.  Accordingly, CDC fails to meet its burden for recovering prejudgment interest pursuant to section 3287(a).

Because we find damages uncertain, we do not address Critchfield's argument that "[f]uture damages are ineligible for § 3287(a) mandatory interest because the future is inherently uncertain and . . . future damages have yet to occur as of judgment."

## DISPOSITION

The order denying prejudgment interest is affirmed.  Critchfield is entitled to recover costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

9

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
DESAUTELS, J.

We concur:


＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
RICHMAN, ACTING P. J.


＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
MILLER, J.

*CDC San Francisco, LLC v. Critchfield Mechanical Inc.* (A168357)

10